83   340
161   463

# Biddle's Appeal.   Nicklin's Estate.

1. Upon the termination of a trust where the real estate remained unsold and the commissions on the rents were not an adequate compensation for the care and management of the estate, an amount proportionate to the trouble and responsibility incurred was taken from the *corpus* of the estate and paid to the trustees.

2. Trustees had the care and management of an estate consisting of city and suburban property for nineteen years. The character of the property was such that it required attention and involved trouble and responsibility. At the expiration of the trust, the real estate, which was valued at $204,000, remained unsold. The commission on the rents received by the trustees amounted to only about $200 per year. *Held*, that $2000 as additional compensation for their care and management of the estate, was a proper allowance, and that this amount should be taken from the *corpus* of the estate.

3. An attempt was made by the *cestuis que trustent* to surcharge the trustees with certain items, which claim the court below rejected. The trustees paid $250 counsel fees to resist this and conduct other litigation, all of which arose at the instance of the beneficiaries. There were no other charges for professional services during the continuance of the trust, which was managed with care, fidelity and economy. *Held*, that this charge of $250 was moderate and should have been allowed.

January 25th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ. Williams, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term 1876, No. 27.

This was the appeal of George W. and Chapman Biddle, trustees, under the will of Mrs. Julia M. Nicklin, deceased, from the decree of the court sur exceptions to the adjudication of the account of said trustees.

Mrs. Nicklin died May 22d 1855, and the trustees assumed the duties of the trust a few days thereafter. By the terms of the trust, they were to collect the rents and profits of her estate, and pay the net income to her sisters, Miss Maria McPherson and Mrs. Margaret Washington, for their lives, and after the death of both to transfer and convey the estate to their descendants. Miss McPherson died unmarried, and Mrs. Washington died leaving one child, Julia M., now married to Dr. Caleb Hornor, in whom has vested the entire estate free from the trust. The property left in trust was chiefly real estate, consisting of two stores on Chestnut street, two

small houses on China street, and a farm of about sixty acres, called Stouton, on the north-eastern limits of the city of Philadelphia. This farm, now a tract of about 50 acres, 10 acres having been sold by the trustees, is in the Twenty-fifth ward, the city being built up to it on two sides. Through this property streets were opened, and various municipal improvements, such as curbing, paving, &c., made, all of which required care and watchfulness on the part of the trustees.

In their account filed the trustees made no charge for collection of the rents, or for making up their accounts, nor for professional services in appearing before road juries and obtaining damages for the opening of streets through the farm. The value of this farm was about $140,000, and the average commission of the trustees on the rent was about $35 per annum. The whole estate was valued at about $204,000, and the average commission on the income thereof was about $209.15 per year.

Before the auditing judge the accountants claimed, 1. Commissions on the amount of purchase-money received on the sale of 19 lots of ground 4 per cent. on $2090. 2. A counsel fee of $250, for professional services rendered to them. 3. A commission of 3 per cent. on the value of the estate remaining unsold at the time of the death of the *cestui que trust*.

On behalf of Mrs. Hornor it was claimed,

1. That accountants should not be allowed the credits claimed for payment of taxes on Stouton farm, inasmuch as they negligently permitted the property to be rated as " suburban," instead of "farm land," and that the trustees should be surcharged with the difference, $575.54.

2. That accountants be surcharged with the difference between the rent they received for " Stouton," and a higher rent, which it is alleged could have been obtained, and which was offered for the place, viz. :—

From April 1st 1862, to April 1st 1867, $225 per an., $1275.00
"　"　" 1867,　"　" 1876,　200　"　1800.00
_____
$3075.00

3. Objection was also made to rate of commissions asked on real estate sold ; to counsel fees, and to any commissions on the *corpus* of the estate.

The auditing judge, O'Brien, J., allowed 3 per cent. commissions on the sale of the 19 lots, and also the $250 counsel fees, and disallowed the claim of commissions on the *corpus* of the estate, but, under the authority of Twaddell's Appeal, 1 Weekly Notes 227, allowed the trustees $2000 as compensation for their long-continued services.

Both the claims of Mrs. Hornor to surcharge the trustees with taxes and rent were overruled.

Exceptions were filed to this adjudication by all the parties.

The Orphans' Court reduced the allowance for counsel fees from $250 to $175, and struck out the allowance of $2000 out of the *corpus* of the estate, Hanna, J., in delivering the opinion, saying :—

" The first exception of the *cestui que trust* is, therefore, in part sustained. In all the authorities upon the subject of commissions or compensation to trustees, and others in that capacity, we have been unable to discover an instance wherein a trustee, having the charge of real estate, and collecting the rents for a series of years, upon which he has deducted the usual commissions of five per cent., has, at the termination of the trust, the real estate being unconverted, been allowed either a commission upon the valuation of the real estate, or a gross sum, as compensation for services during the continuance of the trust. The real estate was valued by the trustees at $204,000, on which they claimed three per cent. commissions. Being of opinion that a claim of this nature is not sustainable, it was properly refused. While the compensation of a trustee is always regulated by the particular circumstances of each case, and although a general rate has been adopted as applicable to a majority of cases, yet where the facts disclose unusual labor and services performed, they will be regarded as sufficient to take the case out of the general rule, and entitle the trustee to an additional compensation. In ordinary cases the usual allowance of five per cent. is sufficient as well to cover necessary expenses, as for care, labor and hazard (Gable's Appeal, 12 Casey 395), and unless a contrary intention appear, the compensation must come out of the income of the fund (Spangler's Estate, 9 Harris 335). The usual duties of a trustee comprise the care and supervision of the estate, collection of income, payment of taxes and interest upon encumbrances, and leasing and keeping the real estate in repair. If their performance requires extraordinary labor or unusual trouble, he should be liberally rewarded; but if not, then the customary rate of compensation only should be allowed. As we cannot gather from the evidence that the services rendered by accountants were other than those ordinarily demanded in the execution of similar trusts, the exceptions of the *cestui que trust* are sustained."

From this decree the trustees took this appeal.

*S. S. Hollingsworth* and *William A. Porter*, for appellants.— No authority can be discovered where it is said that trustees are not entitled to compensation where the trust property consists of unconverted real estate, and it is contended that in this state trustees are entitled to compensation for their risk and trouble out of the *corpus* of the estate, whether the trust is for collection and distribution, or for custody and management, whether the *corpus* be

personal property either derived from personal securities or from sales of real estate, or whether it be real estate unconverted at the termination of the trust. The contention that when the trust property consists of real estate, the compensation of the trustees is limited to the commission usually allowed on the rents, is based upon one of two propositions, both of which are erroneous. It either means that the right to compensation at all is in some way dependent on the character of the trust property, or it means that there is ordinarily no responsibility or trouble in the management of real estate. The first of these propositions has already been shown to be incorrect, and the second is contradicted by the experience of every man who has ever owned real estate.

In Twaddell's Appeal, 1 Weekly Notes 227, $1000 were allowed as compensation out of the *corpus* of a trust property consisting of unconverted real estate. The question involved in this case did not arise in Spangler's Estate, 9 Harris 335.

The rate of commissions which has been established by practice in Philadelphia county where real estate has been converted, is three per cent., while an examination of the cases decided by this court, from Stevenson's Estate, 4 Wharton 98, down to Eshleman's Appeal, 24 P. F. Smith 42, shows that the average rate of commission upon the proceeds of real estate sold has been three and one-third per cent.; and it is argued, therefore, that where labor, care and responsibility were incurred in the management of a large estate, three per cent. is no more than a just compensation for such services.

*E. Spencer Miller*, for appellees.—The appellants have not been able to produce a single case in which commissions have been allowed upon unsold real estate. The reason is obvious. It is text-book law that the tenant for life is bound to make all repairs and to keep down encumbrances. He has the enjoyment of the property, and the maxim is "*qui sentit commodum debet sentire et onus.*" The remainderman has nothing whatever to do with the property until the falling in of the life-estate; the duty and responsibility of properly caring for it devolve upon the tenant for life. Where, therefore, there is a trust, the duties of the trustee respecting the payment of taxes, making repairs, &c., are performed on behalf of the tenant for life as clearly as the collection of the rents. He must, therefore, pay for these services out of the rents received by him; in other words, the commissions on the income include compensation for all the services and responsibility of the trustee. That compensation of the trustee should come solely out of the income. See Spangler's Estate, 9 Harris 335.

McCausland's Appeal, 2 Wright 466, precisely governs this case.

In Twaddell's Appeal, *supra*, the executors had a power of sale, but did not hold the legal title. The property was not "trust

property," as stated by appellants.   They performed certain duties with regard to the land—planting trees, offering it for sale, &c.— and this court said that " commissions as such were not earned and are not recoverable."   The sum of $1000 was allowed them for actual labor, but this bears no analogy to a claim for commissions by trustees who have already been paid out of the income.

Mr. Justice PAXSON delivered the opinion of the court, February 5th 1877.

This record presents the question whether trustees of real estate who have had the care of it for several years, and received a commission upon the income, are entitled to further commissions or compensation out of the *corpus* of the estate when they come to hand it over to those entitled in remainder upon the termination of the trust.   The learned judge of the Orphans' Court, who made the adjudication at chambers, allowed the appellants $2000 as such compensation.   Exceptions were filed to this allowance, whereupon the Orphans' Court reversed the action of the judge at chambers, and rejected the claim.   This ruling is assigned here for error.

The claim of the appellants is resisted mainly upon two grounds, viz.: 1st. Because no case can be found in which such a claim has been allowed; and, 2d. Because the estate in the hands of the remaindermen is not liable to any charge for commissions, the same being payable exclusively out of the income.   The first objection, while entitled to weight, is not conclusive.   In the absence of authority it is sometimes necessary to decide cases upon principle. When so decided they become precedents for subsequent cases.   It is no sufficient answer to a valid claim to say that no adjudicated case can be found which is precisely in point.   We see no difficulty in disposing of this question both upon reason and authority.   In Twaddell's Appeal, 1 Weekly Notes 227, it was held that where no sale of the real estate had been made by the trustee, he was not entitled to charge commissions as such.   But it was also held, that he had a right to compensation. 'In that case the trustee was merely the donee of a power.   The power was never exercised. The parties in interest elected to take the real estate devised as land.   The trustee had advertised the property for sale, and had planted some trees.   The Orphans' Court awarded him $1000 as compensation, and upon appeal to this court the decree was affirmed. The general rule running through all the cases is, that a trustee should receive a compensation adequate to his care and trouble. Such compensation is proportioned to responsibility incurred and to the labor and care bestowed: Pusey *v.* Clemson, 9 S. & R. 207; McElhenny's Appeal, 10 Wright 347.   In the case last cited there is a distinct recognition of the principle that commissions on the income of real estate may be a wholly inadequate compensation for its care and management.   It must be conceded, that if the appel-

lants in this case had sold the real estate at the commencement of the trust they would have been entitled to the usual commissions upon such sale. They did not sell, but held it for nearly nineteen years, to the great advantage of those in remainder, and to the manifest increase of their own care and trouble. There is neither authority nor reason for a rule which would give liberal commissions upon a sale, and yet deny all compensation for years of careful management. The fact that the appellants received a commission upon the income is not to the purpose. It does not affect the principle. It bears merely upon the amount of compensation. In some instances a commission upon the income of real estate would be a full compensation for the care of it, in others it would be wholly inadequate. The second ground of objection, that compensation for care and management can only be taken out of income, is equally untenable. Had the trustees sold the realty the commissions would have come out of the *corpus* of the estate. They did sell a portion of it, and took out their commissions without objection. That they did not sell the residue was for the benefit of those in remainder. They should therefore pay for the care and management. The life-tenants paid for the collection of the rents, which were for their benefit. It would be unjust to require them to pay for the care and management of the property for several years, when their interests would have been greatly promoted by its sale. Spangler's Appeal, 9 Harris 335, is not in point. The question there was whether the trustee, the *cestui que trust*, being an annuitant, should deduct his commissions out of the income as it was paid over. If the appellants here had paid over the gross income to the life-tenants we do not think they could successfully claim commissions on such income out of the *corpus* of the estate. But for so much of their care and management of the real estate as was directly and palpably for the interest of the remaindermen, we think they are entitled to be paid. The learned judge who made the adjudication allowed the appellants $2000. We would not be disposed to reverse his decision upon the question of amount unless for clear error. The testimony reported by him as to the extent of the care and labor bestowed is not full. Yet, as to a portion of the real estate, it is not difficult to see that a commission on the rents would not be an adequate compensation for its management. Stouton farm, by far the most valuable portion of this estate, is located on the outskirts of the city. It is in the immediate vicinity of improvements, and streets have been opened through portions of it. There is no class of property that requires more constant care than rural property in the out-lying wards of a large city. The opening of streets through this property required attendance upon road juries, and involved claims for damages and assessments for benefits. There was responsibility also. The liability of such property to municipal liens requires constant vigilance. The title may be swept away

[Biddle's Appeal.]

by a judicial sale upon a judgment recovered without notice to the real owner, upon a claim filed against an unknown reputed owner. The pittance received by the appellants as a commission on the rents of this valuable property is no proper compensation for the care and management of it for nineteen years. We think, therefore, that it was error to set aside the adjudication. From the facts, as presented, the amount fixed by the learned judge appears reasonable. We are asked by the appellants to increase it. We do not feel justified upon the evidence in doing so.

We think the court below also erred in reducing the amount allowed for counsel fees. The accountants were put upon the defensive by an attempt on the part of the *cestuis que trustent* to surcharge them with a large sum for alleged laches in the matter of rent and taxes. This attempt failed, and very properly. The entire claim of the accountants for the care of the *corpus* of the estate was also resisted. This claim has been allowed in part. An offer was made by the accountants to refer the question of their commissions to the arbitrament of Joseph A. Clay, Esq., an Orphans' Court lawyer of ripe experience. This offer the *cestuis que trustent* declined, although advised by their counsel to accept it. It thus appears that the charge for counsel fees was the result of their own unsuccessful litigation. Their own conduct rendered it a necessity. Nor is the amount unreasonable. It is but just to the appellants to say that this estate appears to have been managed not only with care and fidelity, but also with economy. We notice no charge for professional services during the continuance of the trust, except one of $23.50 in an injunction case. The litigation incident to opening streets through the farm appears to have been conducted without cost to the estate for counsel fees. Under the circumstances the amount claimed was moderate and ought to have been allowed.

The decree is reversed and set aside; the adjudication made at chambers is approved and confirmed, and distribution ordered to be made in accordance therewith; the costs of this appeal to be paid by the appellees.