## Wasserman Trust

Before Klein, Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Cuthbert H. Latta*, for exceptant.

*George H. Nofer, Schnader, Harrison, Segal and Lewis* and *Minturn T. Wright, 3rd, Dechert, Price & Rhoads*, contra.

KLEIN, J., April 30, 1969.—Benjamin Wasserman, the settlor, directed that upon the death of his son, Howard, which occurred in 1965, the sum of $10,000 per annum be paid in equal quarterly installments from the *net income* unto Howard's wife "with whom he is married and living at the time of his death . . . for and during the term of her life until her death or remarriage, whichever shall first occur . . ." He also directed that the balance of income be paid to Howard's children, with further provision that they were to receive the principal upon attaining the age of 30 years.

Howard was survived by his wife, Nancy W. Wasserman, who is 44 years old and unmarried. He was also survived by two children, Diane Mraz and H. Barton Wasserman, who are now both over 30 years of age.

The estate has a present value of approximately $1,400,000. Settlor's two grandchildren have requested the court to exonerate the excess of principal not needed to secure the annual income of $10,000 to Howard's widow and to award such excess to them.

The auditing judge directed the trustee to retain $500,000 to be composed of such assets at current market values as the trustee shall select and awarded the balance outright to settlor's two grandchildren in equal one-half shares.

No exceptions were taken to the adjudication. Objections were filed by Howard's widow to the schedule of distribution which was filed pursuant to a direction in the adjudication. She contends that if the securities which were retained were sold, the principal would be reduced below the $500,000 fixed by the auditing judge because of liability for payment of federal capital gains tax. She also complains because she alleges that the securities retained by the trustee were selected without due consideration to her personal situation with respect to income taxes.

The auditing judge dismissed all of the objections whereupon exceptions were filed which are now before us for consideration.

Our primary concern is that the distribution of principal to the remaindermen will not in any manner or at any time jeopardize the right of Howard's widow to receive the full gift of income to which she is entitled.

Since the gift of $10,000 per annum is to be paid only from the net income, it seems clear that principal

may not be invaded to make up any possible deficiency in income. Moreover, it is doubtful whether excess income may be accumulated to meet such deficiencies. It is also questionable if any agreement made by the remaindermen with respect to the retention of income or the use of principal to meet deficiencies would be enforceable in view of the stringent spendthrift limitations contained in the trust instrument.

We are in full agreement with the conclusions of the auditing judge for the reasons which are so well set forth in the adjudication and his opinion sur objections to schedule of distribution, with but a single caveat.

Those of us who lived through the great depression of 40 years ago, will ever remember the drastic collapse of the American economy. Many highly regarded securities and investments became worthless over night and millionaires who had enjoyed fabulous incomes became penniless paupers. Howard's widow has a life expectancy of about 35 years. Who, among us, can prognosticate what will happen to our dollar in the years which lie ahead? Who knows with certainty whether the American people will again be subjected to a financial collapse similar to the depression?

The gift of $10,000 annually to the widow is a charge upon the entire residue. It seems clear to us that any doubt or question with respect to the adequacy of the fund set aside to secure the payments to her must be resolved in her favor. Accordingly, we have reached the conclusion, with the full approval of the auditing judge, that the award in the adjudication of $500,000 to The Fidelity Bank should be increased to $600,000. In all other respects the adjudication and the schedule of distribution are confirmed without change. In this manner, we believe the interest of Howard's widow will be protected from possible unknown contingencies and also from the impact of any taxes which may be imposed upon the trust portfolio.

We refrain from expressing any opinion concerning the type of investments to be selected by the trustee in setting up and administering the aforesaid fund of $600,000.

The exceptions are dismissed and the adjudication and schedule of distribution, as modified in this opinion, are confirmed. A supplemental schedule of distribution to include the additional $100,000 awarded to the trustee shall be submitted, in duplicate, to the auditing judge.

BURKE, J., May 6, 1968.—

### OPINION SUR EXCEPTIONS TO SCHEDULE OF DISTRIBUTION

This matter comes before the court on objections to the schedule of distribution filed by Nancy Wasserman (Nancy) claiming that the schedule does not conform to the adjudication in the following respects:

1. The bonds and common stocks consigned to the fund of $500,000 retained to provide $10,000 per annum for Nancy are not in fact worth $500,000 because they have a built-in capital gains tax liability. Thus it is claimed that if the entire portfolio were liquidated immediately the proceeds of the sale after payment of the tax would be less than the $500,000 required by the adjudication.

2. The securities were selected by the trustee without due consideration for Nancy's personal situation as regards taxes, and,

3. If such consideration had been given to her situation the trustee would have selected only tax exempt bonds for the trust and the balance would have consisted of cash.

The answer to the first objection can be dismissed succinctly. The reason this court directed that the capitalization of two percent be used instead of the more common three percent rate in establishing the size of the fund to be retained by the trustee was because it

was shown that the assets which the trustee proposed to retain had a low basis for income tax purposes and, therefore, would be subject to capital gains tax (the fund set forth in the schedule of distribution is substantially identical to the one in exhibit L-2). As was said in the adjudication, to which no exceptions were taken, at page 5 "fixing the principal sum to be retained in trust the court has considered the possibility of capital gains taxes generated by reason of conversions during the term of the trust".

The first objection is, accordingly, dismissed.

The second and third objections listed above are closely related and are not proper questions for this court. Once again I say that Nancy may not dictate investment policy for which the trustee must answer to all. The trustee was bound to consider the "legitimate interests of all other parties in interest" (Adj. 6). The trustee selected stocks and bonds which produce 30 percent tax exempt income and 70 percent taxable income. The discretion of selection rests solely in the trustee and this court will not interfere in the trustee's exercise of that discretion unless there is a clear showing of abuse. Morton Smith, an investment counselor, whose investment expertise was unquestioned, testified that he would have invested the entire fund in "deep discount tax exempt bonds". However, the fact that one investment counselor would have invested the fund in a different fashion than the trustee did is not a showing of abuse by the trustee. The settlor gave Nancy "$10,000 from the net income" of the trust. He did not give her $10,000 free of taxes.

The trustee has balanced the interests of the colife tenants and remaindermen, H. Barton Wasserman and Diane Mraz. I find no abuse of discretion which would warrant this court's intervention.

The second and third objections to the schedule of distribution are dismissed.

BURKE, J., May 6, 1968.—

SUR ACCOUNT ENTITLED FIFTH ACCOUNT

This trust arises under deed of trust of Benjamin Wasserman dated December 2, 1931, and became funded by insurance proceeds upon the settlor's death on September 3, 1934.

By the terms of the deed, which was irrevocable, the settlor assigned certain policies of life insurance to the trustees therein named, to receive the proceeds thereof in trust, and after payment of specific annual sums out of income to seven named beneficiaries, to pay the balance of income to his son, Howard Wasserman, for life, together with any income released by the death of any of the named income beneficiaries.

A copy of the deed is attached hereto.

All of the named income beneficiaries of specific annual sums are deceased.

The accounting is of the fund awarded to the accountants in trust for Howard Wasserman by adjudication of President Judge Klein filed on May 16, 1961. Settlor's son, Howard Wasserman, died on May 31, 1965, and the account was filed by reason of his death.

Upon the death of the son, Howard Wasserman, the settlor provides that the income of the trust shall be paid $10,000 per annum to Howard's wife, for life, or until her remarriage, and that the balance thereof shall be paid in equal shares to Howard's children until such children attain age 30 respectively, whereupon an equal or proportionate share of the principal shall be distributed to such child absolutely. Further provisions concerning principal undistributed are not presently pertinent.

Howard Wasserman was survived by his wife, Nancy W. Wasserman (Nancy), whom he married on December 4, 1963, and with whom he was living at the time of his death. He was also survived by two children, Diane Mraz (Diane) who was born on May 17, 1927,

and H. Barton Wasserman (Bart), who was born on May 26, 1930. Since each of Howard's children has attained age 30 they are entitled to as much of the principal of the trust as is not required to be retained to provide $10,000 income per annum for Nancy.

With respect to Howard's wife the exact provisions of the deed are as follows:

"To pay from the net income unto the wife of the son Howard with whom he is married and living at the time of his death, the sum of Ten thousand dollars per annum, in equal quarterly instalments, for and during the term of her life until her death or remarriage, whichever shall first occur...."

As shown by the account the balance of principal in the trust has a current market value of $1,400,000 and the children of Howard Wasserman ask that the court exonerate that portion of principal not required to secure Nancy's annual income of $10,000.

Section 802 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.802, provides that when a sum of money is charged upon property by inter vivos trust, the court at the audit of any accounting may enter a decree exonerating and discharging such portion of the property charged as to it may seem beyond the amount requisite for providing a sufficient continuing security for the payment of the charge, or may direct that excess income be accumulated for the further protection of the charge, or be distributed to the persons entitled thereto.

Nancy recognizes that the principal of the trust exceeds the amount requisite to secure her income gift of $10,000 per annum, and she proposes that all principal in excess of $500,000 shall be exonerated.

Originally Nancy proposed that the principal retained in trust be invested entirely in income tax exempt bonds. She now asks that the fund retained be awarded to the trustee in cash.

Bart objects to retaining $500,000 in the trust. He contends that the amount proposed by Nancy exceeds the amount requisite to secure her income gift and proposes $400,000 as sufficient security. He also objects to the investment of the fund exclusively in income tax free bonds and contends the principal shall be composed of stocks and bonds to be selected by the trustee. In addition to a fund of $400,000 Bart would agree that a continuing fund of $2,000 be withheld from surplus income to further secure Nancy's gift should a deficiency arise. He would also agree that Nancy's annual sum be paid out of principal should the income be insufficient.

Diane, who originally acquiesced with Nancy's proposal, now suggests that $425,000 be retained in the trust to secure Nancy's income gift. She likewise insists that the principal be composed of stocks and bonds to be selected by the trustee. She too would agree that a continuing fund of $2,000 be withheld from surplus income as a buffer against an income deficiency and that Nancy's annual sum be paid out of principal if necessary.

If payment of Nancy's annual gift is limited to income, the corporate trustee, Fidelity Bank, proposes that $500,000 shall be retained in trust as the amount requisite to secure payment.

Nancy's gift is expressly limited to the income of the trust and, in the absence of a contrary intent a deficiency in income may not be paid out of principal: Pusey Estate, 370 Pa. 572 (1952); Elmore Estate, 379 Pa. 155 (1954). Consequently, the proposal of Bart and Diane that Nancy's annual sum be paid out of principal should an income deficiency arise may not be adopted: Dwight Estate, 389 Pa. 520 (1957).

Nancy objects to the trustee allocating to the portion of principal which remains in trust any of the stocks or bonds which now comprise the residuary trust. She

contends that these stocks and bonds as presently constituted have a built-in capital gain which would generate income taxes as and when converted and that such taxes would substantially reduce the capital sum retained to secure her income. She, therefore, asks that the fund to be retained be awarded in cash.

In fixing the capital sum to be retained in trust to secure Nancy's income it should be borne in mind that the settlor did not establish a separate trust for her. By the terms of the deed her income gift is a charge upon the corpus of the entire residuary trust. She has the first call upon income. Consequently, if the security which the settlor provided for her is to be reduced at the instance of the remaindermen, it is imperative that ample funds be retained to secure her gift. Nancy is 44 years of age and has a life expectancy of some 35 years. The trust, therefore, may continue far into the future. Accordingly, I have concluded that a principal sum of $500,000 should be retained by the trustee which, on the basis of a two percent return, will produce the sum required to satisfy Nancy's income; the balance of principal will be exonerated and made available for distribution to the remaindermen. In fixing the principal sum to be retained in trust the court has considered the possibility of capital gains taxes generated by reason of conversions during the term of the trust.

To realize the capital sum of $500,000 in cash would require substantial conversions of assets presently held by the trustee and would impose upon Bart and Diane considerable expenses. Moreover, it would incur immediate capital gains taxes that would fall upon them. Nancy has no legal right as beneficiary of a continuing trust to demand an award of principal in cash. In support of her demand she cites McGuffey's Estate, 123 Pa. Superior Ct. 432 (1936) and sections 734 and 983(9) of the Fiduciaries Act of 1949, supra. McGuffey holds that a distribution of assets in kind is the excep-

tion and not the rule. Sections 734 and 983(9) of the Fiduciaries Act of 1949, supra, provide that a distribution in kind may be made only for cause shown. See also Minichello Estate, 368 Pa. 639 (1951); Vandergrift Estate, 406 Pa. 14 (1962).

The cases cited in support of Nancy's claim are inapposite. In McGuffey the trust for decedent's widow terminated and the remaindermen demanded a cash distribution in lieu of certificates of interest in a mortgage pool, and the court, stating that distribution in kind was the exception and not the rule, remitted the record to enable the trustee to show why distribution should not be made in cash. The rule stated in McGuffey, and the provisions of the Fiduciaries Act designed to facilitate final distribution of assets among several distributees, apply to an outright distribution and do not apply to a share of principal that remains in trust. The trust for Nancy continues under the settlor's deed. The portion of principal which remains in trust to secure her income is not a distribution. No new trust is created, nor is an annuity being funded. Nancy is a successor beneficiary to a portion of the income formerly paid to her husband. Her income is charged upon the entire trust. Hence, the instant case must be distinguished from the cases cited in support of Nancy's claim.

Neither statutory nor decisional law give Nancy any legal right as income beneficiary of a subsisting trust to require the trustee to reduce existing assets to cash in order to reinvest the proceeds in investments of her choice. While the trustee should give due consideration to her personal situation as regards taxes, as well as to the legitimate interests of all other parties in interest, so that the trust may be administered as far as practicable for the benefit of all, Nancy may not dictate investment policy for which the trustee must answer to all the beneficiaries. I so decide. . . .

And now, May 6, 1968, the account is confirmed nisi.