## Good's Estate. John Good's Appeal.

*Decedents—Trustees—Insurance as security—Payment of premiums.*

An executor having elected to insure his property as additional security for estate moneys in his hands, pursuant to an order of the court requiring him to do so at his own expense or file a bond, cannot claim credit against the estate for the insurance premiums.

*Attorney's fees—Discretion of court—Review.*

The allowance of counsel fees, being within the discretion of the court below, will not be disturbed except for plain error. In this case counsel fees for advice as to the improper claim against the estate for insurance premiums were disallowed.

*Family arrangement—Advances—Reimbursement—Married women.*

A family arrangement evidenced by a written agreement, whereby the heirs requested the executor to make advances to another heir to save her home from sale by execution and charge the same against their shares, will be upheld as to the parties to such arrangement, even against a married woman. Such a contract is not one of guaranty or suretyship, but an authority to the executor to pay money on account of the heirs. Bucknor's Estate, 136 Pa. 23, applied.

*Parol and written agreement in arrangement.*

An advance by the accountant to pay for and save the same heir the personal property upon the homestead, although not within the express terms of the written agreement, will be allowed where the conduct of the parties shows that it was a part of the scheme for the relief of the heir and was within the intention of the parties as to the payment of the money by the accountant and his recoupment out of the distributive shares.

*Practice—Distribution—Circuity of actions—Subrogation.*

Where an heir had her advances secured by mortgage, the executor would be entitled in equity to subrogation, even if the agreement was *ultra vires,* and the orphans' court, having the fund before it for distribution, will, to avoid circuity of action, deal with it as equity requires.

Argued March 18, 1892. Appeal, No. 370, Jan. T., 1892, by John Good, executor of George Good, deceased, from decree of O. C. Lycoming Co., dismissing exceptions to report of auditor on exceptions and to distribute executor's account. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

The facts of this case are partially set forth in Abram Good's Appeal, and Ault's Appeal, above. It further appeared from the auditor's report that in 1881, the appellant, John Good, as executor of George Good, deceased, was ordered by the orphans' court to insure his mill property for $5,000, and keep such insurance at his individual expense, as additional security for the moneys in his hands, the interest of which was payable to testator's widow; or file a bond in like sum, with sureties, for the faithful performance of his duties as executor and trustee. In obedience to said order, he insured his property, and in his third account claimed credit as against the estate for the premiums paid. The auditor rejected the claim and surcharged him accordingly. [1]

There was also a surcharge for $3,000 and interest, for property purchased from the estate (see Abram Good's Appeal, above). [2]

Credit was claimed in the account for $263.75 for counsel fees. There had been an allowance of $300 in the prior accounts, and $303 as special services. The auditor held that the services of an attorney were not necessary in the management of the trust fund from the time of filing the second account to the filing of the present account. The only evidence as to advice given during this period related to the question of insurance mentioned above. The auditor held that this was not properly chargeable to the fund, and accordingly reduced the allowance to $150, and charged the accountant with the difference. [3]

The executor also claimed $305.92 advanced by him to pay for personal property on the farm which was the subject of the

agreement of 1877, given in Ault's Appeal, above, sold on execution against Mrs. Ault's husband. The executor testified: " The pressure of the heirs was very heavy for me to pay off the debt—there was three or four of them—and thereby save or secure her a home. . . . The personal property of John Ault was sold by the constable and I purchased it and gave the property over to Hettie M. Ault. That was why the receipt for $305.92 was given. . . . I was called on afterwards to advance money to clear off the farm." The auditor allowed the claim without making any specific finding of fact as to the transaction.

The executor filed exceptions (1–3) to the above findings of the auditor. The court, METZGER, P. J., dismissed the exceptions but modified the decree by striking out the allowance for $305.92, on the ground that it was not covered by the agreement. [4]

*Errors assigned* were (1–3) the dismissal of exceptions as to surcharges, quoting them; and (4) modifying the distribution as above.

*Henry C. Parsons*, and *Samuel L. Youngman*, for appellant, cited as to the power of a married woman to bind herself by an agreement under the circumstances of this case, Act of April 11, 1856, § 4, Purdon, Marriage; Bucknor's Est., 136 Pa. 23; Grim's Ap., 105 Pa. 382.

*C. La Rue Munson*, with him *Addison Candor*, for appellees.—Findings of fact by the court below will not be disturbed except for plain error. Bedell's Ap., 87 Pa. 510; Babcock v. Day, 104 Pa. 7.

The contract was one of guaranty and cannot be enforced against a married woman.

OPINION BY MR. JUSTICE MITCHELL, July 13, 1892.

The order of the orphans' court in 1881 was in the alternative, that the executor and trustee should procure and maintain at his individual expense an insurance on his mill property which was the security for his debt to the estate, or file a bond with sureties. The latter alternative at least was clearly within the authority of the court to order, as part of its control over the trustee, and the wisdom of its exercise is not for us to discuss. No objection seems to have been made by the trustee to

this order.   Under it he elected to procure the insurance on his mill, which by the express terms of the order was to be at his own expense.   It is too late now to seek to charge it to the estate.   The auditor was right in striking out this item of the account.

In regard to the surcharge of three thousand dollars for the purchase money of the homestead we need only say that the evidence sustains the auditor as to the fact of the purchase by the accountant, and the item therefore properly belonged in this account.

The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance.   Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error.   This is not such a case, for while the amount asked by the accountant is not in itself excessive or unreasonable, it does not appear that the whole of it was necessary for the estate and therefore to be allowed in the account.

For these reasons the first three assignments of error are overruled.

The fourth assignment however must be sustained.   The agreement of Jennie Smith to be responsible for the money advanced to her sister Hettie Ault to save the latter's homestead, and the pledge of her interest in the estate to indemnify the executor, are beyond question, as is shown by the auditor. The writing is without date except the year, 1877, but all parties are agreed that it was made at the time and in pursuance of a family arrangement in the latter part of 1877 or beginning of 1878.   The transactions seem to have culminated some time during January, 1878, as the sheriff's deed was acknowledged January 29, and Mrs. Smith got a mortgage from Mrs. Ault to secure her, a short time after.   The payment for the personal property now in dispute, was certainly prior to this, whatever may have been the actual day the receipt was signed. We do not regard the precise dates as important.   The nature of the family arrangement is entirely clear.   It was to save the

home of Hettie Ault, one of the heirs, from threatened sale. The disputed advance of money by the accountant was to pay for and save to the same heir, Hettie Ault, the personal property in and upon the same homestead. Though not within the express terms of the written agreement, and apparently prior in date to the signing of it, we think the weight of the evidence, and especially the conduct of the parties, show that it took place during the negotiation and discussion of the situation of Mrs. Ault, that it was part of the scheme for her relief, and was within the intention of all the parties as to the payment of the money by the accountant, and his recoupment out of the distributive shares of Mrs. Smith and Mrs. Ault upon settlement of the estate.

The objection that the agreement was one of guaranty or suretyship for Mrs. Ault, and therefore not binding on Mrs. Smith as a married woman cannot prevail. Though not technically a refunding bond within the Act of April 11, 1856, P. L. 315, the agreement is in express terms an authority to the executor to pay money on account of Mrs. Smith, and is equivalent to an order for an advance on account of her share, as much so as if it had been in terms an order to pay to Mrs. Ault and charge against Mrs. Smith's share. Such an order and payment in compliance therewith would be a good voucher for its amount to the executor upon accounting. Common honesty requires her to treat such an advance as if made to herself personally, and a court of equity will not permit her to claim in opposition to it. The principles of Bucknor's Estate, 136 Pa. 23, fully cover such a case. Moreover, Mrs. Smith has security by mortgage from Mrs. Ault and her husband, for the repayment of her advances in this transaction. If she should now repudiate this advance because the agreement was *ultra vires* equity would subrogate the accountant to her rights under the mortgage, at least after payment to her of the other advances secured by the same mortgage, and the court having the present fund before it, will to avoid circuity deal with it as equity requires. The claim of the accountant was honestly due and was properly allowed by the auditor.

Decree reversed and distribution reported by the auditor reinstated. Costs of this appeal to be paid out of the fund.