## McGuffey's Estate.

Argued April 21, 1936.

Before Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Carroll Caruthers,* for appellants.

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* with him *Rabe F. Marsh,* for appellee.

Opinion by Parker, J., September 30, 1936:

These appeals are from a decree of distribution by an orphans' court after the filing of an account by a trustee. Complaints are made of the commission allowed the trustee and of a part of the order which permitted the trustee to deliver to the appellants participation certificates in a mortgage pool in lieu of cash demanded by them. Robert McGuffey at the time of his death on February 17, 1917, was the owner of an undivided one-

third of a valuable tract of coal land. He left to survive him a widow, Harriet McGuffey, and nine children, three of whom were minors. The guardian of the three minors petitioned court for permission to sell the interests of the three minors at private sale. At the time the sale was approved, on petition of the widow, all of the children who were sui juris, and the guardian of the minors, it was further ordered by the orphans' court that in consideration of the widow joining in a deed for the property and thereby discharging her dower, $13,055.55, being the one-third of the purchase price, should be paid to Merchants Trust Company, appointed trustee by the court and that the interest on said sum should be paid to the widow "during the term of her natural life, and at her death the said principal sum to the heirs of the said Robert McGuffey, Dec'd., or his legal representatives". The widow died on November 14, 1932 and by a merger between Merchants Trust Company and The First National Bank of Greensburg, the latter institution succeeded as trustee of the fund. We are of the opinion that the order cannot be sustained in the present state of the record, and that the case should be returned to the court below for further hearing.

(1) The accountant claimed from the widow a commission of five per cent on the income and from the remaindermen five per cent on the corpus, both of which sums were allowed by the court. Appellants insist that the corpus should not be charged with any part of the trustee's commission and that in any event five per cent on the corpus in addition to a like charge on the income is too large a commission.

Special reliance is placed on *Letterle's Est.*, 248 Pa. 95, 98, 93 A. 935 and *Weir's Est.*, 251 Pa. 499, 504, 96 A. 1086. Neither of these cases presented a situation that is parallel to the one in hand as an examination of the basis of those decisions will show. *Letterle's*

*Est.* was authority for the principle that where personal property was given to one for life with remainder over and the life tenant took possession and gave a bond for the protection of the interests of the remainderman as required by the Act of May 17, 1871, P. L. 269, the life tenant could use the property at his own discretion. The property was essentially his own and he was a debtor to the party entitled to take at his death. The remainderman became a creditor and was entitled to receive the amount which came into the hands of the life tenant with interest from the date of the tenant's death.[1] A distinguishing feature under that act was that the life tenant took the profits and stood the losses in the corpus of the estate. He might use the corpus in private business, speculate with it or use it as he saw fit. In the case we are considering all parties in interest, widow and children, voluntarily joined in an agreement, ratified as to the interests of the minors by an order of court, whereby the dower interest of the widow was cancelled and a specific fund was placed in trust with the Merchants Trust Company. That trustee was authorized to invest the corpus and was required to pay the income to the widow and at her death the corpus to the children. This, in contrast to the cases cited, created a relation of trustee and cestuis que trust and not debtor and creditors. It follows that the cases referred to have no application. Cf. *Loewer's Est.*, 263 Pa. 517, 106 A. 789.

There is a second line of cases, some of which are cited by the parties, that is of aid in determining the question involved here. In *Spangler's Est.*, 21 Pa. 335, 337, it was said: "All trustees are entitled to a reasonable compensation for their services as they are rendered, and, unless a contrary intention appear, the

---

[1] The Act of 1871 was repealed by the Fiduciaries Act of June 7, 1917, and by §23 of that act (20 PS 635) a different rule is now provided. *Dempster's Estate,* 308 Pa. 153, 162 A. 447.

compensation must come out of the income of the fund with which they are intrusted." That case involved a trust created by will for the benefit of a wife during her life or widowhood with remainder to testator's children. It was held on an accounting that the expense of administering the fund should come out of the income since there was nothing to indicate a contrary intention. To the same effect was *Butterbaugh's Appeal*, 98 Pa. 351.

While the general statement in *Spangler's Est.*, supra, has been repeated as late as in the case of *Davidson's Est.*, 287 Pa. 354, 135 A. 130, a number of exceptions have been added by later cases covering situations where the rule does not apply.

In *Biddle's Appeal*, 83 Pa. 340, the *Spangler* case was considered and the general statement that income and not principal was liable for expenses of administering the fund unless a contrary intention appears was further modified by allowing a charge to principal where the services rendered were partly for the benefit of the remainderman. There the corpus of a trust estate consisted of real estate valued at $204,000, the management of which extended over nineteen years. The commissions on income amounted to only $200 per year and the Supreme Court approved an allowance of $2,000 from the corpus because the trustee rendered valuable services in the preservation of the trust estate. In *Bosler's Est.*, 161 Pa. 457, 462, 29 A. 57, the applicable principle is thus stated: "For services rendered by way of collecting and paying over the income, the compensation is a fit charge upon the income and is properly deducted from it. But the labor, care and responsibility pertaining to the conservation of the capital itself are properly a charge on it, and are to be deducted from it when the trust expires, or the particular trustee's relation to it ends." Again in *Davidson's Est.*, supra, p. 358, it was held that the

rule had an exception where unusual or extraordinary expenses are necessarily incurred. In that case expensive legal proceedings were necessary to preserve the corpus and the expenses were pro rated between life tenant and remainderman.

We understand the rule applicable to such a trust as the one we are considering to be that all trustees are entitled to compensation for their services and that where the service and responsibility pertains to the collection and preservation of the capital itself, the commissions allowed on that account are a proper charge to be deducted from the corpus when the trust expires or the particular trustee's relation comes to an end. We infer from the proofs that this trust was created in the interest of both the widow and the remainderman and that it was advantageous to all that in making a sale the funds should be substituted for the widow's dower interest and the remainder thereof and thus command a better price. The situation is not, with respect to the principles involved, different from a trust estate created by will. Consequently our conclusion is that there is no principle of law which stands in the way of charging a reasonable proportion of the trustee's commissions to the corpus where it appears that he has performed service and assumed responsibility in the interest of the principal fund.

The amount of the commission to which the trustee is entitled is dependent upon the responsibility assumed and the services performed. The circumstances disclose a situation that has a bearing on the commission the accountant should receive. As we have stated above it is proposed by the accountant to deliver to the remaindermen certificates for interests in a mortgage pool in lieu of cash. We learn from the argument and from a petition to intervene presented to this court that The First National Bank of Greensburg is in liquidation and by order of court First National Bank

in Greensburg, a new institution, has been substituted as trustee for the mortgages in the pool to which we have referred, and that service will be required in the liquidation of the pool. This is a matter that should be taken into account in fixing the compensation to which the bank is entitled. It is contrary to the policy of the law to permit a trust estate to be unnecessarily depleted by the payment of fees to successive trustees for the same estate.

For reasons stated later it is necessary to reverse the order heretofore made and remit the record to the lower court for the purpose of further hearing. At that time it should be determined by the court in the light of the record as then presented what if any compensation the trustee should receive.

(2) It is next urged that the remaindermen are entitled to receive the corpus in cash because the Fiduciaries Act of 1917, it is alleged, is not applicable and if it is applicable the accountant did not bring itself within the terms of that act and the Act of April 6, 1925, P. L. 152 as amended (15 PS 2514) authorizing trust companies to invest trust funds in mortgage pools.

It is not claimed by appellants that the trustee did not have authority to invest the funds in a mortgage pool, but it is asserted that the trustee should have been prepared to convert the securities on termination of the trust and pay the balance to the remaindermen in cash. See *Crick's Est.*, 315 Pa. 581, 173 A. 327; *Kefover v. Potter Title & Trust Co.*, 320 Pa. 51, 181 A. 771. The appellee and the court below rely on §49, par. (e) 1, of the Fiduciaries Act of 1917 (20 PS 865) as authority for the order requiring the cestuis que trust to accept the securities in kind. It is there provided: "Whenever it shall appear, at the audit and distribution of an estate in the orphans' court, that the balance, after payment of debts, includes stocks, bonds, or other securities, which, for reasons satisfactory to

said court, have not been converted by the accountants, it shall be lawful for said court to direct distribution of such assets in kind, to and among those lawfully entitled thereto, including fiduciaries."

There is not any merit in the contention of the appellants that the Fiduciaries Act does not apply to this trust because the trust was created two months before the passage of the act. Not only is there no reason why the act should not apply to questions arising when the distribution is made, but in addition the section was substantially but a reenactment of the Act of June 10, 1911, P. L. 870, repealed by the later act. Undoubtedly if "reasons satisfactory to said court" why the stocks were not converted had been shown to the court it would have had authority to authorize delivery in kind. The difficulty is that there is not a scintilla of evidence furnished in support of the failure to convert. In fact the trust officer of the trust company admitted that it had made no attempt to convert the assets, assigning as a sole reason that it had no funds in its commercial department available for that purpose.

Distribution of assets in kind is the exception and not the rule: *Giese's Est.,* 119 Pa. Superior Ct. 232, 239, 180 A. 711; *Weir's Est.,* supra; *Simpson's Est.,* 253 Pa. 217, 223, 98 A. 35, 37. Distribution in kind may not be authorized by the court unless reasons are shown which are satisfactory to the court for so doing: *Komara's Estates,* 311 Pa. 135, 139, 166 A. 577; *Dempster's Est.,* 308 Pa. 153, 162 A. 447. The accountant having furnished no evidence which would form a basis for the decree of the court, the decree cannot be sustained. We are all of the opinion that the order cannot be sustained on the basis of the record as presented to us.

Appellants also claim that the accountant was guilty of a breach of trust in that the mortgages which were

placed in the pool were taken over from the commercial department of the bank. The assistant trust officer of the accountant so testified, and there is no evidence to the contrary. In *Yost's Est.*, 316 Pa. 463, 467, 175 A. 383, the Supreme Court took occasion to state that it did not approve of the practice of a trust company acquiring property from itself for investments of trust funds. "A corporate trustee violates its duty to the beneficiary if it purchases for the trust securities owned by it in its securities or banking department": Restatement, Trusts §170 (i).

While the trustee, where he commits a breach of trust of this nature, is ordinarily chargeable with any loss or depreciation in value of the trust estate resulting from the breach of trust we are not prepared to say that such penalty should be inflicted here. Where a loan is made secured by first mortgage on real estate with a reasonable margin of safety between the appraised value and the amount loaned, such investment, like one in federal, state and municipal bonds, is not considered of a speculative character. It certainly would not be a breach of trust for a fiduciary to turn over to a trust estate which it was managing for investment at the prevailing market price a federal bond or a bond of this commonwealth which it then owned. We do hold, however, that if a corporate trustee purchases from one of its own departments a mortgage, and the investment results in a loss to the trust estate, then the burden of proof is on the trustee to show that due care was exercised in making the purchase.

"Whether the trustee has acted properly in making an investment depends upon the circumstances at the time when the investment is made and not upon subsequent evidence. If at the time when a trustee makes an investment it is an investment which a prudent man would make at that time he incurs no liability

although subsequently the investment depreciates in value": Restatement, Trusts §227 (m).

We are all of the opinion that the order of the court below should be reversed, but in view of the importance of the matters involved, not only to the parties but to other creditors of the liquidating bank, the case should be returned to the court below for a rehearing and disposition of the case on the evidence as then presented. The conclusions reached by the court on the matters last considered may have a bearing in the adjustment of any commissions to which the accountant may be entitled.

The decree of the court is reversed as to each appeal and the record is remitted for further proceedings not inconsistent with this opinion.