## Harton's Estate.

508

Argued March 29, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. Denning Stewart,* with him *Harold R. Schmidt, William J. Kenney* and *Stewart & Lewis,* for appellant, No. 111, and appellee, No. 123.

*James S. Crawford,* with him *Ella Graubart* and *Patterson, Crawford, Arensberg and Dunn,* for appellee, No. 111, and appellant, No. 123.

OPINION BY MR. JUSTICE MAXEY, May 26, 1938:

This case involves cross appeals from a decree settling the account of a testamentary trustee, to certain items of which, representing investments in mortgages and real estate, the beneficiary filed exceptions in the court

510

below, demanding surcharges. The court in its decree surcharged the accountant as to one mortgage investment but dismissed all the remaining exceptions. From the former ruling the accountant has appealed; and from the latter the beneficiary.

The trust was created by the will of George M. Harton, deceased, who died in 1920. The relevant provision of his will did not relieve accountant from the duty of maintaining a trust corpus of legal investments. The accountant invested funds of the estate in securities of three types: ordinary or "straight" mortgages, wholly owned by the trust estate; participating interests in single mortgages; and participating interests in a group or aggregate of mortgages comprising what is known as a mortgage pool. The beneficiary of the trust is George M. Harton, Jr., a son of the testator. By the terms of the will the trust terminated on October 23, 1933, when the *cestui que trust* became of age, the corpus being now payable to him. The trustee filed its account in April, 1935, together with a supplement bringing it down to the date of the audit, and requested the court to make distribution in kind of certain assets, including the interests of the estate in real property. To this account various exceptions were filed.

One of the exceptions, and the only one sustained by the court below, was to an investment made by accountant in July, 1923, in what was known as the "E. Payton Wright mortgage," $9,000 in amount, on a Murrayhill Avenue property, a duplex dwelling, in Pittsburgh. Wright had given his bond and mortgage on the property 24 years before, in 1899, to the executor of a decedent's estate and the latter sold the mortgage to accountant, which took title thereto in its own name and so held it for the trust estate until, prompted by our decision in *Yost's Estate*, 316 Pa. 463, 175 A. 383, it assigned the mortgage of record to itself as trustee. When the mortgage was taken third parties were in possession of the premises as owners, and accountant does not ap-

pear to have made any investigation to discover the whereabouts or solvency of the bondsman, Wright; he is now dead and it is admitted the bond is valueless. Wright's grantees assumed no liability on the mortgage. The interest was paid until November, 1933, when it went into default, and no rent was received thereafter until after foreclosure in February, 1935.

The exception to this item in the account, as presented to the court below, challenged the propriety of the investment on several grounds. The court found all but one of the latter untenable; it imposed a surcharge on the sole ground that, as exceptant claimed, "the mortgage was negligently managed." The court justified the surcharge principally on the basis of two inspections of the premises made by the auditing judge after the audit, held in May, 1936, which, it said, showed the following: "For many years the house, the walks around the house, and the lot with its retaining wall in the front and steps to the house level, have been greatly neglected. The poplar trees along Murrayhill Avenue have lifted the sidewalks and the street has not been kept in good repair. The trustee should have noted all the defects in this property and required payments on the principal of the mortgage. . . . A superficial examination of the premises shows that it will take a very large sum of money to restore this property in such manner as to make it desirable and bring it in demand as an investment." The court below in its opinion further said: "An inspection was made after the trial. A walk around the house and a view of the rear dispelled all doubt about the necessity for sustaining the exception which complained of bad judgment. But without any inspection at all, the photographs and the facts disclosed in the testimony, and, especially, that the mortgage was twenty-four years old when it was purchased in 1923, and the bond accompanying it was outlawed, and there was no chance to recover except from the mortgaged premises, were sufficient to sustain the exception."

The *cestui que trust,* in excepting to the investment, confined his substantial complaint to the charge that the investment was improvidently *managed* by accountant. The surcharge appears to have been imposed, at least in part, because the investment was improvidently *made* in the first instance. Apart from accountant's pertinent contention that no objection was made to the original investment, we discern nothing in the record before us to indicate that accountant was wanting in ordinary prudence either in making or in managing the investment.

As to the admitted fact that the mortgage in question was assigned to and held by accountant in its own name, without disclosure of the trust relationship, on the public records, it is sufficient to point out merely that from the beginning the investment was clearly designated on the books and records of the trustee in several places as held for this estate. There was no lack of good faith, and promptly after our decision in *Yost's Estate,* supra, the correct status of the investment was placed on record. The beneficiary received proper notices and no objection on this account was made, as found by the court itself. The circumstances were clearly such as to require the application of the principle established in *Guthrie's Estate,* 320 Pa. 530, 182 A. 248, and *Dillon's Estate,* 324 Pa. 252, 188 A. 134, where trustees in taking titles to "straight" mortgages in their own names were held to have acted in good faith and not required to account in cash for the sum invested in the mortgages.

The other reasons for surcharge advanced by the court below are inadequate. The fact that the mortgage was one of many years' standing when purchased by accountant did not necessarily condemn it. The mortgaged premises were appraised in March, 1923, before the investment was accepted, at $15,000. The margin of security was then ample, and the mortgage's age did not exclude it from the field of legitimate trust investment. It was not essential, to make the mortgage a

legal investment under the applicable provision of the Fiduciaries Act then in force (Act of June 29, 1923, P. L. 955, section 41(a) 1, 20 PS section 801), that the accountant secure evidence of the financial responsibility of Wright, the mortgagor and bondsman, or ascertain that the debt could be collected from him before taking an assignment of the mortgage. We said in *Curran's Estate*, 312 Pa. 416, 421, 167 A. 597: "The important question is, is there a mortgage of real estate, a real security?" See also *Maroney's Estate*, 311 Pa. 336, 166 A. 914. Accountant could do no more, when charged with a breach of its fiduciary duty, than show, as it did, that when the money was invested, the apparently reliable information which it obtained showed that the margin of security was ample, that there was no default, and that in all other respects the investment was suitable for fiduciary purposes.

The charge of mismanagement is not sustained. Accountant's evidence showed that the interest on the mortgage was regularly paid until November, 1933, prior to which the trust had terminated by exceptant's reaching majority. The only taxes then in arrears were for the year 1933. In 1926 and 1929 accountant secured re-appraisals of the premises, and since these showed that the security was still adequate, extensions of the mortgage were granted. On re-appraisal in 1932, at $13,200, no further extension was granted. Efforts to secure payment of the mortgage, or reduction of the principal, were unavailing. Finally, a year and a quarter after default, it became apparent that the owner could not carry the property and foreclosure was resorted to. It was not shown that an earlier foreclosure would have benefited the estate, or that the delay in settlement of the trustee's account was in any way prejudicial to the exceptant's interest. After foreclosure a substantial sum was spent by accountant in rehabilitating the property, it was placed in tenantable condition, and was rented at the time of the audit.

The record is barren of evidence to convict accountant of neglect in administering either the mortgage investment or the premises themselves after possession was taken. We cannot consider the facts disclosed by the personal inspections of the auditing judge, made after the hearing in 1936, as controlling. If repair of the premises had been neglected, as the court declared, there was nothing to demonstrate that this condition existed during the regular course of administration of the trust, up to October, 1933, or that thereafter the trustee would have been justified in doing or spending more, by way of rehabilitation of the premises, than it proved it did on taking possession. Nor was there evidence tending to show that accountant neglected, prior to that date, to ascertain that the owner was maintaining the premises in a fit condition. The examination of the property made by the auditing judge, which is analogous to that of a jury of view, could have little bearing on the question of proper maintenance. We do not doubt the propriety of the inspection, as within his competent powers as the trier of fact: 2 Wigmore, Evidence (2d ed.), 709, section 1169. Here, however, the issue was not the condition of the premises at the time of the audit, but whether the trustee had observed common prudence in requiring the owner to maintain the premises in reasonable repair during the life of the mortgage, and in caring for the premises itself after occupancy was taken over from the owner. Just as in the cases holding that a jury's view is to enable it more thoroughly to comprehend and weigh the testimony *(Flower v. Baltimore, etc., R. Co.,* 132 Pa. 524, 19 A. 274; *Roberts v. Philadelphia,* 239 Pa. 339, 86 A. 926; *Wadsworth v. Mfgrs.' Water Co.,* 256 Pa. 106, 100 A. 577), so here the legitimate function of the view was to assist the judge to a clearer understanding of the evidence of alleged neglect. We find in the record no evidence to support the neglect charged.

In the absence of any proof of loss to the estate resulting from the claimed mismanagement, the assignments

of error on the accountant's appeal must be sustained, the decree reversed, and the record remitted for the entry of an order directing distribution of this investment in kind.

The appeal by the *cestui que trust* presents a number of questions relating to the trustee's administration of other investments, but all of these questions were correctly disposed of by the court below. One of the exceptions was to an investment in a participating interest in a $225,000 mortgage on certain store and apartment buildings, of which the share of this estate was $1,500. When the mortgage was taken by accountant, the property was appraised by the latter's employee, a competent judge of real estate, at a valuation of $424,000. There is no suggestion that this was in excess of the fair value of the premises, and where the dealings between the mortgagor and the trustee were, as here, without suggestion of collusion, no complaint can justly be made that the appraisement was made by an employee rather than a so-called "disinterested third party." It is not apparent that the appraisement was for that reason more favorable to the mortgagor than it would otherwise have been.

The stressed complaint regarding this investment is that when the mortgage was first taken in 1927, and participations were allotted to trust estates under accountant's administration, it undertook the task of acting as rental agent for the mortgagor and received *from him* a commission of five per cent on rentals so collected. The balance, to the extent required by the mortgage, was then applied in payment of interest on the principal amount thereof and distributed as income to the participating estates, on which the accountant likewise took commissions of five per cent as compensation for its services as trustee, so long as there was no default. Such an arrangement, far from amounting to a secret profit received by the trustee at the expense of the trust estates, was for their benefit and enabled the trustee at

all times to see that the property was efficiently managed to the advantage of all. The compensation received by the trustee as rental agent for the owner was not money which the participating trust interests would otherwise be entitled to. They would have belonged to the owner, or would have been paid out to some other rental agent as fair compensation for services rendered. It was not shown that the rental commissions were in any sense a profit; on the contrary, they were just charges for services performed by accountant in its required administration of the trust, and their receipt does not offend the admitted rule against a trustee's obtaining a bonus or commission from dealings with specific trust property, as commented upon in A. L. I. Restatement of Trusts, sections 170 and 203 (pp. 438 and 549).

As to commissions accepted by the trustee since it took possession as mortgagee on default by the mortgagor in 1931, it was clearly shown that these were taken solely as rental agent, and, since the entire rentals collected from that date to the present have been devoted to the payment of carrying charges, and none have been allocated as income to the participating estates, no question of double commissions or secret profits arises in respect to that period.

Further complaint is made that the accountant was without power to reduce the interest rate payable on this mortgage, from six per cent to five per cent, at a time when the depression made it doubtful whether the mortgagor could continue payment of the interest stipulated. As a "salvage measure," common at the time, we cannot condemn this expedient.

The primary issue between the parties on this branch of the case arises from the fact that investments were made by the fiduciary of certain funds of the estate in participation interests or certificates in single mortgages and in an aggregate of mortgages termed an installment mortgage fund, more familiarly known as a

"mortgage pool." Other trust estates, administered by the accountant, became the owners of similar interests. A portion of these funds were so invested by accountant prior to the passage of the Act of April 6, 1925, P. L. 152, which was an amendment to the General Corporation Law of 1874 (P. L. 73), now superseded by the Business Corporation Law of 1933. The Act of 1925 modified the established rule, sanctioned for decades by statute as well as judicial decision, that a trust company must so designate its trust investments as to indicate clearly to which trust each investment belongs; it provided that the fiduciary relationship might appear *solely upon the books and records of the trustee,* where *participating interests in a general trust fund* of mortgages on real estate *are allotted to various estates.* It is claimed that where investments of this character were made before the Act of 1925, supra, became effective, a surcharge must be imposed, since in many instances the mortgages were taken in the name of the trustee in its corporate capacity, without designation of their trust status as a matter of public record.

We held in *Crick's Estate,* 315 Pa. 581, 173 A. 327, that where such investments were made after the empowering Act of 1925 a surcharge would not be imposed for this reason alone, since the act expressly authorized this means of earmarking the respective interests of all. This decision was followed in *Yost's Estate,* 316 Pa. 463, 175 A. 383, which involved only mortgages wholly owned by the trust estate, and a surcharge was imposed because the Act of 1925 applied only to participating interests. In that case we reaffirmed the rule above referred to, and declared, at page 467: "It is well settled that where a trustee invests trust money in property which he takes in his own name as an individual the beneficiary has the option to accept the investment or require the trustee to account for the money so invested, with interest." This principle was again reaffirmed in *Guthrie's Estate,* 320 Pa. 530, 182 A. 248, where we applied the Act of 1925

to participating interests of trust estates in both a single mortgage and a mortgage pool. Referring to the practice of trust companies in making investments for trust estates in mortgage pools, we said, at page 533, in words applicable to the facts of the instant case: "No designation of the company's trusteeship or of the existence of the other trustees appeared either on the face of the mortgages or on the public record thereof, the company being described therein as the mortgagee. The practice followed by the company in thus carrying these mortgages has been followed for over 40 years by trust companies generally in Allegheny County and elsewhere throughout the state, with the exception of Philadelphia County. It has been approved by the Orphans' Court of Allegheny County and by the Department of Banking of the Commonwealth. Inquiries by that department through the state have ascertained that trust mortgages aggregating approximately $138,000,000, at least, are carried without disclosure of the trusteeship on the public record, while other mortgages amounting to over $78,000,000 are designated upon the public record as trust mortgages."

As to straight mortgages, wholly owned by individual estates (to which the Act of 1925 did not apply), the surcharge claimed in *that* case was denied, on the grounds stated as follows: "The loss which the exceptants have suffered, if any, has in no way been the result of the breach of trust here complained of, but, for all that appears, would have been nonetheless incurred had the mortgages been properly carried from the start. Clearly the exceptants should not be permitted to shift their loss to these trustees. It would be unconscionable to require the trustees to account in cash under the facts of this case. No court of equity should permit it. The exceptants have at most suffered what may be only a temporary loss, and that solely because of the economic conditions of the times and the consequent general shrinkage in values. They would nonetheless ignore the

good faith and sound business judgment of the trustees, who have made full disclosure of their conduct of the trust, and would take advantage for their own gain of a technical violation of law by the imposition of penalties therefor. The court below was plainly right in rejecting their claim. It is to be understood, however, that the decree of the court below is affirmed not because the conduct of the trustees was rightful, nor because there was an affirmance of their conduct by the exceptants, but because, under the circumstances, a grave injustice would result if the trustees were required to account in cash as claimed."

The legal rule asserted in *Yost's Estate,* supra, was expressly approved and applied in *Quest's Estate,* 324 Pa. 230, 188 A. 137, and the exception announced in *Guthrie's Estate,* supra, regarding single mortgages held for the trust estate in the trustee's individual name, was again held applicable in *Dillon's Estate,* 324 Pa. 252, 188 A. 134. Accompanying these cases was *Fenelli's Estate,* 323 Pa. 49, 183 A. 758, where the rule against the individual designation of the mortgage record was enforced in the case of a participation interest. Other cases in this line of authority having similar bearing on the question are *Rambo's Estate,* 327 Pa. 258, 193 A. 1, and *McGuffey's Estate,* 123 Pa. Superior Ct. 432, 187 A. 298.

It must be conceded, therefore, that investments of the types here complained of had no statutory authorization in this state prior to the Act of 1925, supra, and the illegality of the investments in question is determinable as of the law in force at the time when they were made: *Iscovitz's Estate,* 319 Pa. 277, 280, 179 A. 548. In the absence of enabling legislation the authorities are conflicting as to whether such investments as those now before us are tainted with a fundamental illegality in their making, apart from the question of the trustee's liability if loss results. The cases are collected in annotations in 103 A. L. R. 1192 and 110 A. L. R. 1166.

This question, however, we deem it unnecessary to adjudicate on the record before us, in the absence of any showing that the alleged breaches of trust on the part of the accountant were in any degree responsible for the losses, if any, which resulted. As pointed out above, a surcharge was refused in *Guthrie's Estate,* supra, primarily for this reason. So also in *Gibson's Estate,* 312 Pa. 359, 167 A. 282, we refused a surcharge on the same ground in part. In that case it was said: "Appellants assert there has been a shrinkage in the value of the real estate bound by several of the mortgages to which exception is taken, but this was a contingency which the guardian was not bound to foresee, and which in any event had no relation to the form of the security." In the A. L. I. Restatement of Trusts, sections 204 and 205, it is pointed out that the trustee is liable only for losses *resulting from* a breach of trust. Here it cannot be asserted that the investments made in the name of the trustee, without public designation of their fiduciary character, were the cause of the losses alleged to have occurred.

The mortgage pool and exceptant's interest therein are thus described by the court below, in its opinion joined in by three judges of the Court of Common Pleas of Allegheny County, who sat together in banc in determining this issue, because of the concurrent jurisdiction of the latter court over some of the trust represented in the pool: "The accounting trustee shows in the balance for distribution two mortgage pool certificates . . . having a total face value of $15,641.50. The certificates are offered for distribution to the beneficiary instead of cash and the sum represented by them cannot be realized at the present time. The pool referred to is known as No. 1 in the Peoples-Pittsburgh Trust Company and was closed by appropriate action of that corporation on January 10, 1932, and thereafter no new mortgages were added. On July 17, 1933, the pool was closed by direction of the orphans' court and liquidation

began. There has been liquidation of all claims of participants to the extent of 18 per cent and some to the extent of 35 per cent, the latter allowed by the courts in necessitous cases. No payments in excess of 35 per cent have been permitted nor will they be until all participants have received a like amount. On the day it was closed, Pool No. 1, created and operated by the Peoples-Pittsburgh Trust Company, had a total face value of $14,491,515 and it consisted of 1,500 mortgages. . . . The pool is composed entirely of installment mortgages. Interest and an installment of principal of all the mortgages were payable each month. There were no foreclosure of mortgages in the pool prior to November, 1931, and until that time there were no mortgages in default permitted to remain in the pool. When default occurred the mortgage was withdrawn and another substituted."

We are of the opinion that the alleviating circumstances which, in *Guthrie's Estate,* supra, induced a relaxation from the strict rule against the holding of trust investments in the trustee's individual capacity are here present in equal degree. It is not claimed that the mortgages absorbed by the pool were in any sense improper investments *per se.* Of this the exceptant admits he has no knowledge, and it is for this reason he insists that an accounting of the mortgages in the pool be decreed. It would be unconscionable to impose a surcharge on the present accountant on the sole ground of the technical breach of trust asserted, without proof of other violation of duty more clearly responsible for the loss which, events may ultimately show, has occurred. As stated in *Guthrie's Estate,* supra (p. 538), "a court of equity may in its discretion refrain from inflicting penalties which it considers unjust under the circumstances. . . ."

We conclude that the exceptions taken on the ground that the participations here concerned were in single mortgages and mortgages of the pool held by accountant

in its individual capacity were properly overruled by the court below.

Exceptant's further claim is that, irrespective of accountant's right in the first instance to invest funds of his estate in the mortgage pool participations, he is now entitled to a general accounting by the trustee of all the mortgages composing the pool at the time when its active operation terminated by order of the court below. As stated above, the pool contains an aggregate of 1,500 mortgages with a face value of many millions of dollars. Two thousand different trust estates, similar to exceptant's, share in this fund. Exceptant is as yet (save perhaps one other) the only party who has made such a demand. An orderly process of liquidation is now under way, under the control of the Orphans' Court and Court of Common Pleas of Allegheny County. As liquidation is accomplished, payments are distributed pro rata to the interested estates. It is too soon to determine what losses, if any, will be sustained. There appears at present no necessity for the accounting asked for.

The court below, acting with three judges of the common pleas court, appropriately said: "Every person, including the exceptant, having an interest in a mortgage pool has a right to an accounting. No one of them has a right to an accounting which will injure the other participants. There is no right to have repeated accountings of a trust consisting of a pool of mortgages. One accounting in each pool covering all the transactions from its creation until the day of closing, July 17, 1933, will be sufficient to determine the legality of all questions involved until the time for liquidation began. These and supplemental accountings of the management of the trusts until the final distribution when required by the concurrent orders of the common pleas and orphans' court will be sufficient to satisfy all requirements. . . . The exceptant is not presently entitled to an accounting because the same would impose an incalculable expense upon all other persons having interests in the pool."

Another complaint is that when accountant received partial payments of principal on certain mortgages in which this estate held participating interests, these payments were applied to other participating estates which needed cash and not to the Harton trust. This likewise was a matter of discretion for the trustee to determine. The mortgages were then in good standing, no discrimination against this estate appears, and to have apportioned the payments of principal pro rata to all participating estates would have subjected accountant to vexatious burdens it was under no legal duty to assume.

On the question of the allowance by the court below of counsel fees to the accountant in an amount in excess of what would be justified in an uncontested audit, it is sufficient to say that this question was not pressed in the court below, no specific exception was taken to the allowance made, and since no surcharge is now to be imposed, under the legal principles above discussed, we will not now substitute our judgment for that of the court in banc. As we have had occasion to point out in a number of cases, "the amount of fees to be allowed to counsel . . . is one peculiarly within the discretion of the court of first instance": *Good's Estate,* 150 Pa. 307, 24 A. 623; *Rambo's Estate,* 327 Pa. 258, 266, 193 A. 1. The record evidences no abuse of discretion in this respect.

The foregoing disposes of all matters referred to in the statement of questions involved in both appeals. The other grounds for reversal urged by exceptant are wholly subsidiary to the main issues in dispute and impress us as being without merit. It is apparent that the *cestui que trust,* disappointed in his expectation of receiving a corpus of securities at predepression values, has endeavored to force his trustee to assume the losses born of the depression. We find no act or omission on the part of the trustee to which the decline in value of the trust res can justly be charged. What was said in *Detre's Est.,* 273 Pa. 341, 117 A. 54, is applicable here:

524

All that is required of a trustee "is common skill, common prudence and common caution, and he is not liable when he acts in good faith as others do with their own property." See also *Dempster's Estate*, 308 Pa. 153, 162 A. 447. Due consideration of the difficulties under which this trustee labored in a critical period of administration leads to the conclusion that it did everything reasonably possible to conserve the trust estate and is now entitled to deliver it in kind to the beneficiary.

In Appeal No. 123, March Term, 1938, from the decree of the court below sustaining the exceptions of appellee, George M. Harton, Jr., to appellant's account as trustee, in respect to the E. Payton Wright mortgage, the decree is reversed, with instructions to enter a decree thereon in conformity with the foregoing opinion; in Appeal No. 111, March Term, 1938, from the decree dismissing the remaining exceptions to the trustee's account, the decree is affirmed; costs in each instance to be paid out of the estate.