## Middleton Estate (No. 2)

*Frederick E. Smith*, for accountant.

*Harriet M. Mims*, for exceptant.

SATTERTHWAITE, J., October 21, 1955.—This case is probably an inevitable aftermath of our prior decision in this same trust estate, handed down on June 11, 1954, and reported in 1 D. & C. 2d 162. We then refused to render a merely advisory opinion as to whether the testamentary provisions hereinafter quoted amounted to a restriction upon the general right of a trustee to invest in all legal investments by limiting the types of permissible securities to those specified therein. The trustee, in order to compel a ruling on this question, thereafter purchased five shares of American Telephone and Telegraph Company stock and immediately resold them, sustaining a nominal loss of $15.22. It then filed a partial ac-

count, showing this transaction only, under the last sentence of section 702 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.702.

The matter is now before the court on exceptions thereto filed by a guardian and trustee ad litem appointed by the court to represent the interests of minor and possible unborn or unascertained remaindermen. Counsel for the accountant and the guardian ad litem have stipulated the facts involved, and have specifically agreed that the trustee exercised due care and prudence within the meaning of section 2 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.2, in the investment and sale of the stock in question. By a supplemental stipulation dated October 6, 1955, filed herewith and hereby directed to be made a part of the record, counsel and the guardian ad litem further agreed that the subject investment also met all the requirements of section 9 of that act, as amended. Thus, the parties have submitted the matter for decision on the sole question of the propriety of the investment in light of the testamentary provisions involved.

By the fifth paragraph of his will, testator, who died on January 2, 1888, gave his residuary estate to accountant in trust to manage and control the same and to collect the income thereof and to make all necessary and proper payments thereout. The will further provided:

"And further In Trust within the space of Two years from the time of my death to convert into cash such of my estate as shall not consist of such securities as are hereinafter mentioned and to invest the money so realized at their discretion in the following securities viz. in bonds of the state of Pennsylvania, in bonds of the Government of the United States, or in bonds and mortgages which shall be first liens upon real estate situate between Spruce Street, Girard Ave-

nue, Twentieth Street and Fifth Street in the City of Philadelphia in the State of Pennsylvania provided always nevertheless that no sum of money belonging to my estate and exceeding in amount one fifth of the value of the whole of my said estate, real, personal and mixed so as aforesaid given, devised and bequeathed by this clause of my will, shall be invested in any one bond, and the mortgage accompanying and securing the same. And provided further that in any case of investment in bond and mortgage as aforesaid under this clause of my will, no sum of money shall be loaned, exceeding one-half of the assessed value of the premises described in the Mortgage Accompanying and securing the said bond, and provided further that where monies shall be invested in bond and mortgage as aforesaid and any part of the security therefor shall be in buildings, then such buildings shall be fully insured in a good and reliable Insurance Company. In case any investment of my estate shall be paid off then my said Trustees shall reinvest in such securities as I have named."

The trustee averred, in the earlier proceedings incorporated herein by the stipulation of counsel, that the trust estate of approximately $460,000 was invested in the securities specified in the will and then yielded 3.07 percent in income, but could earn in excess of 4 percent if all types of "legal" investments might be made. Supporting tabulations comparing interest rates on Government and State bonds in 1881 when testator's will was written with those presently obtaining were set forth, and allegations were made as to the almost self-evident practical impossibility of obtaining mortgages at this time of the type specified in the will. All parties beneficially interested in the trust who were then in being had joined in the earlier proceedings, and it is obvious that the within proceedings were instituted in the interest of the various income

beneficiaries to seek a ruling that the trustee is not confined to the testamentary list of investments. The guardian ad litem, however, contends that the testator's directions amount to express restrictions precluding such result.

While we do not wish to detract in any degree from the opinion heretofore filed refusing to give investment advice in advance or to place this court in the position of a "superfiduciary", and while it is obvious that the instant proceedings were brought to circumvent the spirit of that decision, nevertheless, we now feel compelled to decide the question presented. An actual transaction has occurred and been challenged. Irrespective of the motives therefor, a judicial ruling thereon is now mandatory. Such being the case, the procedure herein adopted would appear to be authorized and proper. See Smith Trust, 80 D. & C. 493; Frazier Trust, 3 Fiduc. Rep. 399; Neafie Estate, 5 Fiduc. Rep. 291. In this connection, however, we further point out that we are deciding only the situation as presented in the within record, i.e., the propriety of a legal investment not specifically referred to in the will. The possible limiting effect of testator's language as to investments he did mention therein is not now involved. We intend to express no opinion upon the subject, for example, of mortgage investments and the import of the restrictive provisions relating thereto. Compare Drexel Trust, 1 Fiduc. Rep. 530.

The powers of trustees to make investments may, in general, be considered to arise from two sources, those authorized by law and those created by the trust instrument. The latter, of course, may, and frequently do, express an intention to enlarge upon the former. It logically follows, therefore, that authorization in the trust instrument, couched in permissive language, to invest in certain types or classes of investments, even

though specified with some particularity, will not exclude the parallel power to invest generally in "legals" as well (Rouse Estate, 1 Fiduc. Rep. 514), although particular types of investments, even though possibly of the "legal" category, may be precluded if the intention of settlor to that effect be definitely and sufficiently expressed: Drexel Trust, 1 Fiduc. Rep. 530.

Moreover, there are cases where the trust instrument purports to give the trustee power to go beyond the list of investments authorized by law, but by other provisions either sets up some generally phrased limitation or otherwise creates doubt as to the effect thereof by the choice of language used. The Orphans' Court of Philadelphia, under the liberal legislative policy dictated by section 18 of the Fiduciaries Investment Act of 1949 hereinafter discussed, has uniformly found ambiguity in the trust instrument in this situation and has resolved the same by construing the restrictive provisions to apply only to the power conferred by settlor generally to avail of "nonlegals", leaving unimpaired the law-given power to invest in all "legals": Smith Trust, 80 D. & C. 493; Wayne Trust, 4 Fiduc. Rep. 100; Woolston Trust, 4 Fiduc. Rep. 141; Tower Trust, 87 D. & C. 447; Shannon Trust, 4 Fiduc. Rep. 554; Dunn Estate, 5 Fiduc. Rep. 169; White Estate, 5 Fiduc. Rep. 503. In these cases, also, the court was concerned only with powers or authorizations granted by settlor and the negative aspects or restrictions thereon; no affirmative direction by settlor was involved.

The instant case, however, would not be governed by the principles enunciated in these cases. No question of "nonlegals" is presented. No optional powers of investment at the discretion of the trustee are expressly provided for in the language used, except to the extent that the reference to "discretion" in the

above-quoted portion of the will would permit the trustee to choose and allocate between the three types of securities mentioned. To the contrary, the instant will presents the more difficult problem of the proper scope or field of investments where the purchase of specific securities is directed, not merely authorized. May the trustee still avail of the alternative and additional powers conferred by law, or is it confined to the express provisions of the will?

Prior to 1949, the law was clear that where mandatory directions were given in the trust instrument as to the securities in which the estate was to be invested, it was the duty of the trustee to follow such directions literally: Nola's Estate, 333 Pa. 106, 111, and cases cited; Casani's Estate, 342 Pa. 468, 471. The several statutes defining legal investments, from the Act of February 18, 1824, P. L. 25, down to the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 41 (a), as variously amended, all expressly provided that nothing therein contained should authorize investments "contrary to the *directions*" of the trust instrument. See also A. L. I. Restatement of the Law of Trusts, §227, comment (t).

The question presented in the within case is whether or not section 18 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.18, has changed such prior law. That section provides as follows:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and whenever any such provision shall conflict with this act, such provision shall

control notwithstanding this act. *In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."* (Italics supplied.)

Assuming that the Fiduciaries Investment Act of 1949 applies to all trusts, whether created prior or subsequent to its effective date (see section 22 thereof, 20 PS §821.22, and the discussion and authorities cited on that subject in Brown Trust, 85 D. & C. 452), do the provisions of the instant will amount to "an express restriction" contrary to the declared legislative policy generally permitting all such investments as are authorized by that act? The appellate courts of the State have not been called upon to construe section 18 in this connection; there are, however, six reported decisions of highly regarded orphans' courts, all holding that even a mandatory direction in the trust instrument to invest in specified securities does not amount to an express restriction against the purchase of "legals" not embraced within such direction.

The first of these is Close Estate, 83 D. & C. 136, decided by the Orphans' Court of Philadelphia in 1952. Decedent died in 1914 leaving a will whereby he established certain trusts and provided that the trustees "shall invest and reinvest the funds which may at any time come into their hands in well secured first Mortgages secured on real estate in the City of Philadelphia or in well secured Ground Rents issuing out of Real Estate in said City or in Two story brick houses clear of incumbrance in good localities in said City or in Bonds of the United States, State of Pennsylvania or the City of Philadelphia". In the adjudication, approved by the court en banc without further elaboration, Judge Hunter held that the trustees had properly purchased certain common stocks, approved as trust investments under the 1951 amendments to the Fiduciaries Investment Act of 1949, in view of the

provisions of the last sentence of section 18 thereof, stating, 83 D. & C. 147-148, as follows:

"The purpose of the Legislature was to protect trust estates in a changing world, beyond the power of a testator or settlor to see or anticipate. The statute is a rule of construction which states the presumed intent of the testator-settlor, and in my opinion is applicable to trusts existing before its passage.

"A statute should receive a liberal construction whenever the evil appears which it was obviously intended to prevent: Armstrong Estate, 347 Pa. 23.

"The instant will contains no express restriction, and is to be construed as expressing testator's preference for the investments he enumerates, and not as forbidding other legal investments."

Brown Estate, 85 D. & C. 452, decided by the Orphans' Court of Delaware County in 1953, involved the will of a decedent who died in 1919 which created the trust in the following language:

"To retain existing investments or to sell the same and make reinvestments as hereinafter provided; to invest and reinvest in mortgages which are a first lien on real estate in Pennsylvania and New York, in the first mortgage bonds of dividend paying railroads, in car trust or equipment trust certificates of dividend paying railroads, in United States loans, in the loans of the State of Pennsylvania and the State of New York, in loans of municipalities, township, school districts and similar public divisions in the State of Pennsylvania, and in ground rents in the City of Philadelphia."

Judge van Roden sustained the trustee's purchase of "legal" common stocks, stating, 85 D. & C. 459, as follows:

"In the *commission's comment* to section 18 of the Fiduciaries Investment Act of 1949, it is stated that

the last sentence of the section 'is intended to make it possible for the fiduciary to invest in investments authorized by this Act, even though the trust instrument indicates that other investments shall be made.' This court approves of the legislative policy, as expressed by the Commission. It is manifestly unwise to bind a trustee in an investment strait-jacket fashioned by a settlor or testator who could not possibly have foreseen the economic exigencies of the present fast-moving world. We must credit the Legislature with the desire to protect and promote the best interests of both income beneficiaries and remainderman of trust funds, and the decision of the Legislature as to the propriety of trust investments should not be disregarded by the courts in the absence of a clearly expressed restriction to the contrary in the trust instrument.

"Accordingly, in the absence of an express restriction in the instant will against making the investments authorized by the Fiduciaries Investment Act of 1949, as amended, this court holds that testator, by stipulating in his will the classification of securities for investment by the trustee, merely indicated his preference as to investment policies and did not expressly preclude the trustee from investing in other legal securities."

In Myers Estate, 85 D. & C. 425, decided by the Orphans' Court of York County in 1953, the trust deed dated August 26, 1921, contained an investment clause, as follows:

" 'Said trustee shall collect the principal of the securities composing the fund when and as they severally shall become due and payable, and shall promptly reinvest the money derived therefrom in tax free covenant securities of the character composing the present fund, whereupon said last mentioned securities shall become part of the corpus of the fund.' "

The original corpus consisted of certain municipal securities which, upon redemption, were reinvested in equivalent securities of certain municipal authorities. Judge Gross refused to direct the trustee to dispose of the substituted investments, holding, on alternative grounds, first, that the authority bonds were of like character to the municipal bonds and, secondly, that section 18 of the Fiduciaries Investment Act of 1949 authorized the investment in the authority bonds in any event, stating, 85 D. & C. 429, as follows:

"In our opinion the investment clause in this trust is not an express restriction on the trustee so as to make it illegal for him to invest in any investment authorized by the above-quoted act."

Frazier Trust, 3 Fiduc. Rep. 399, and Smith Trust, 3 Fiduc. Rep. 401, were both similar decisions by the Orphans' Court of Philadelphia, following the result in Close Trust without elaboration or extended discussion.

In Neafie Estate, 5 Fiduc. Rep. 291, another Philadelphia decision, the trust arose under the will of a decedent who died in 1898, the investment clause apparently ordering and directing the trustee to invest in specified Government or State bonds or first mortgages on Philadelphia real estate. Judge Hunter's adjudication, handed down on April 25, 1955, upheld the investment of funds in approved common stock, stating at pages 296-297 as follows:

"I am not convinced that testator's direction in the present case distinguishes it from the cases previously decided. A direction to invest in certain enumerated investments is not equivalent to an express restriction from investing in legal investments authorized by the Investment Act. When a testator authorizes, or empowers, or directs his trustee to invest in certain enumerated investments, he does not thereby deprive the trustee of the statutory power of investment con-

ferred by the statute, but rather adds to such authorized investments those specifically enumerated in the trust instrument."

After due consideration, we are in accord with the views expressed in these cases by able and experienced jurists. We conclude that the Fiduciaries Investment Act of 1949 has effected a change in the prior law so that the test for the propriety of investments in non-specified "legals" is no longer the presence or absence of *directions* of settlor, but rather whether or not he has set forth restrictions *expressly* relating to "legals". It follows that the trust instrument must definitely and unequivocally negative other investments before those specified therein be construed to be exclusive. Although such an exclusion might and probably should otherwise be *implied* from mandatory language such as employed in the instant will, nevertheless the Legislature has now stated as the policy of this Commonwealth, that restrictive provisions of the trust instrument are of no effect on the law-given power of a fiduciary to invest in "legals" unless they *expressly* go to that question.

Since the within will contains no such express statement, and since the legality of an investment by a fiduciary must be based on the state of the law existing at the date it is made (Iscovitz's Estate, 319 Pa. 277, 280; Harton's Estate, 331 Pa. 507, 519), and since the stock in question was stipulated to have been otherwise legally invested under the Fiduciaries Investment Act of 1949, as amended, any loss sustained by reason of the transaction under consideration is not a proper subject of surcharge against the trustee: Section 2 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.2. Accordingly, the exceptions of the guardian and trustee ad litem should be dismissed, and the account duly confirmed.

Since, as previously pointed out, the within proceed-

ings were obviously instituted for the sole benefit of the income beneficiaries, the entire expense thereof should be borne thereby, with the exception of the items set forth in the trustee's partial account itself, no exception having been filed questioning the charge thereof to principal.

*Order*

And now, this October 21, 1955, for the reasons stated in the foregoing opinion, the exceptions of Harriet M. Mims, guardian and trustee ad litem, to the second and partial account of the Pennsylvania Company for Banking and Trusts, trustee under the will of Charles Wilmer Middleton, deceased, are hereby dismissed and said account is confirmed absolutely.

It is further ordered that $250 be paid by the trustee to said Harriet M. Mims, guardian and trustee ad litem, as compensation for her services herein, said payment together with all other costs and expenses incident to said accounting, other than in said accounting specifically set forth, to be paid or recouped out of income of said trust.