Globe Indemnity Company, Appellant, *v.*
McCullom, Receiver.

Argued October 9, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank K. Willmann,* with him *James J. Burns, Jr.,*
and *Frank R. Sack,* for appellant.

136

*H. F. Stambaugh,* with him *A. L. Petty, Ralph H. Demmler* and *Watson & Freeman,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 27, 1933:

This action is brought by plaintiff, a surety company, to recover from defendant, a lumber company, the loss which the former was required to pay, under the terms of a bond guaranteeing the completion of a large apartment building. The jury found a verdict in plaintiff's favor for $72,500. The court entered judgment for defendant non obstante veredicto and plaintiff appeals.

The facts necessary to an understanding of the controversy are these: Zehner, Harris and Kramer were three of the five directors of the Ellwood Lumber Company. They were also directors of the Aiken Apartments, Inc., a corporation organized to build a large apartment house. The officers of the latter corporation entered into an agreement with the F. H. Smith Company to finance the building of the apartment house. Kramer, who was also a contractor, had the contract for erection of the building. He was to purchase the necessary lumber from the lumber company. The Smith Company required a completion bond and Aiken Apartments applied to plaintiff for it. Not being satisfied with the financial responsibility of Kramer, the contractor, the plaintiff insisted upon being indemnified against any loss and thereupon Zehner as vice-president of the lumber company, joined in the application with Kramer. The application contained a contract of indemnity by which Zehner, purporting to act for the lumber company, and Kramer, as an individual, agreed to indemnify plaintiff against any liability under the bond. The bond was furnished, signed by Aiken Apartments, Inc., by the Ellwood Lumber Company through Zehner, vice-president, attested by Harris, secretary, and by Kramer as principals and by plaintiff as surety. It was in the sum of $700,000. Work on the building was abandoned by the

contractor before the excavation was completed. After the default, plaintiff paid the Smith Company $67,500 in settlement of its liability on the bond. To recover that amount from the lumber company this suit was brought.

The defense interposed was that the undertaking by the vice-president and secretary of the lumber company was ultra vires and that no action warranting the execution of the agreement was taken by the board of directors of the lumber company. The lumber company was formed, as its charter exhibits "for the purpose of the manufacture of lumber or any article of commerce from wood or metal or both." The financial statement of the company showed its capital to be $229,600, its surplus $46,848.71, with debts amounting to $98,253.92. The contract price for the erection of the building was $1,047,825. The amount of the bond was many times the net worth of the lumber company. The lumber company was to furnish all the lumber to the building and in addition kitchen cabinets and ironing boards, although apparently there was no formal contract. It actually furnished lumber amounting to $4,475.45 and received in payment on account thereof $2,684.67. Plaintiff argues that defendant cannot avail itself of the defense of ultra vires, because it received the benefit of plaintiff's performance, but all that plaintiff actually received was the sum of $2,684.67, and it did not receive that from plaintiff, but from the Aiken Corporation.

We have held to the principle that the law will not sanction the effort of a corporation to divert its capital to a different purpose from that for which it was created or to risk it in guaranteeing the obligations of another. "It was not contended by the plaintiff's counsel that the officers had power to bind the company as surety for another's debt. That a contract for that purpose is wholly beyond the powers of the corporation, expressly granted or implied by the statutes relating to mining companies, is so clear as not to be gainsaid": Culver v. Reno Real Estate Co., 91 Pa. 367, 376.

Safe Deposit & Trust Co. v. Federal Street & Pleasant Valley Passenger Ry. Co., 255 Pa. 497, in which we approved the opinion of the learned judge of the Common Pleas of Allegheny County, Judge Evans, is of controlling weight in determining the issue now before us. There a bridge company entered into a contract with a street railway company in which the bridge company agreed to build a bridge across the Allegheny River, the railway company acquiring the right to operate cars across the bridge, paying a toll for the privilege. In addition, the railway company guaranteed the payment of the interest on the bonds issued by the bridge company. A bondholder brought suit against the railway company on its guaranty. We affirmed a judgment for the defendant on Judge Evans's opinion, in the course of which he said (page 499) : "The contract of guaranty was unquestionably an ultra vires act. There was nothing in the charter of the Federal Street & Pleasant Valley Passenger Railway Company authorizing it to guarantee the interest on the bonds of another corporation, and this is particularly the case when there was no consideration passing to the Federal Street & Pleasant Valley Passenger Railway Company for the contract of guaranty. It is urged that the fact that a bridge was going to be built for the accommodation of the street railway company was sufficient consideration for the guarantee of the bonds of the bridge company. The contract between the bridge company and the street railway company provides for the compensation to the bridge company for its grant to the street railway company of the right to occupy the bridge with its railway, and that is, the full consideration." Reference is made in the opinion to Humboldt Mining Co. v. American Mfg., etc., Co., 62 Fed. 356, where the same principle was announced in Judge Taft's opinion. It was also applied in Nat. Bank of Brunswick v. Sixth Nat. Bank, 212 Pa. 238. While it is not necessary to step out of our own State for authorities, one brought to our attention from the Supreme

Court of Texas (Bowman Lumber Co. v. Pierson, 110 Tex. 543, 11 A. L. R. 547) is so apposite to the case at bar that we quote from it as follows (page 545) : "The pledging by a corporation of its credit for another's benefit as a means simply of enabling him to purchase its goods, is not a direct, and hence not a legitimate, means of promoting its own business. It is a means purely indirect, and any benefit derived by the corporation from the transaction is equally indirect. It is not a fostering of the business of a corporation to pledge its capital as security for the debts of prospective customers for the purpose of enabling them to buy its wares. It is inviting its destruction. The creation of custom by such a method is only a delusive benefit to the corporation at best, for the price of it is to jeopardize its capital, not for its own direct benefit, but for the private advantage of another. Its benefit from such a transaction can be only incidental. Such use of its credit is clearly beyond the power of an ordinary business corporation, such as the lumber company here." The mere fact that a contract of guaranty may increase its business or indirectly result in profit to it, does not authorize an ordinary business corporation to guarantee the debt of another: Davis v. Old Colony R. R. Co., 131 Mass. 258; Western Maryland R. R. Co. v. Blue Ridge Hotel Co., 102 Md. 307; Commercial Casualty Ins. Co. v. Daniel Russell Boiler Works, Inc., 258 Mass. 453.

Concluding, as we do, that the contract entered into by the lumber company is ultra vires, the judgment is affirmed.