## City of Philadelphia v. The Philadelphia Gas Works Co. et al.

*James F. Ryan, Abraham Wernick,* and *John J. K. Caskie,* assistant city solicitors, and *Robert McCay Green,* city solicitor, for plaintiff.

*Thomas B. K. Ringe, Arthur Littleton, William Clarke Mason, Michael A. Foley,* and *Maurice Friedman,* for defendants.

MILNER, J., September 16, 1943.—. . . .

### Discussion

In the month of February of 1941 there occurred explosions of illuminating gas in the vicinity of the 1100 block on Greenwich Street, in the City of Philadelphia, as the result of which several persons lost their lives and others sustained personal injuries and property damage. There have been instituted more than 60 suits in trespass wherein more than 150 claimants allege to have been injured or damaged as the result of the explosions. These suits have been instituted against both The Philadelphia Gas Works Company, as the operator of the gas works, and the City of Philadelphia. The claimants allege therein that the company is liable to them because it improperly maintained its gas mains, and that the city is liable to them because it improperly maintained its water mains.

Two of these cases, that of Trerotola v. City and The Philadelphia Gas Works Co., C. P. No. 7, December term, 1940, no. 5228, and that of Ruhl, Admx., v. City and The Philadelphia Gas Works Co., C. P. No. 4, June

term 1941, no. 3498, have been tried and finally passed upon by the Supreme Court of Pennsylvania (346 Pa. 222 and 346 Pa. 214). In the Trerotola case the jury returned a verdict against the company and in favor of the city, whereafter, upon the recommendation of the trial judge, the trial court of its own motion directed the granting of a new trial, in explaining which the court said (quoted at page 225 of the Supreme Court report):

"This was done because of the opinion of the trial Judge, in which the other Judges of the court concurred, that there was ample evidence in the case to show that the water pipes had been negligently maintained by the City, causing leaks and consequent cavities about the water main and the gas main, so that if the action was at all maintainable the verdict rendered in favor of the City and charging the other defendant solely, was against the clear weight of the evidence."

The granting of the new trial and the reasons stated were both affirmed by the Supreme Court.

In the Ruhl case the jury returned a verdict against both the city and the company. None of the other cases has yet been tried.

After the Supreme Court had handed down its opinions in the Trerotola and Ruhl cases, the city instituted the instant proceedings, filing a bill of complaint therein contending that, under the provisions of clause 15 of the lease agreement governing the operation of the gas works by The Philadelphia Gas Works Company:

". . . it is the duty of The Philadelphia Gas Works Company at its own cost and expense at all times to indemnify and save harmless the City of Philadelphia from all loss, injury or damage which may be suffered by City, or by any individual or corporation in his or its person or property by reason of any negligence of said Gas Company, or of the servants, agents or employees thereof, in the use and occupation of the Gas Works: and under the agreement with The United Gas Im-

provement Company it is the duty of the said company to see to it that the said The Philadelphia Gas Works Company well and faithfully perform said provisions of the agreement with the City of Philadelphia."

It is quite clear that the real purpose of the city's claim is to attempt to require The Philadelphia Gas Works Company, as the operator of the municipally-owned gas works, to pay for the negligence of the employes of the city water bureau and other municipal departments. The manifest unfairness of any such purpose is immediately apparent. The judicial affirmance of such contention would necessitate an increase in the reserves for personal injury and property damage which must be set up in the annual operations of the gas works. This, in turn, would necessitate a rise in the gas rate. Thus in the end the burden which is properly that of the taxpayers of Philadelphia, arising out of the operation of the municipally-owned water bureau and other municipal departments, would be shifted to the gas consumer and ratepayer. We are of the opinion that clause 15 is unambiguous and it is inconceivable that the language of said clause may be so interpreted.

Although the city is attempting to accomplish by this unique bill in equity a legal interpretation of clause 15 of the lease agreement, it has not chosen the available remedy by way of a proceeding for a declaratory judgment for the patent reason that in cases arising out of the gas explosions on Greenwich Street in February of 1941 the Supreme Court has sustained a joint verdict against both the city and the gas company and affirmed the right of contribution between joint tortfeasors: Ruhl, Admx., v. Philadelphia et al., 346 Pa. 214; Trerotola v. Philadelphia et al., 346 Pa. 222. In short, the city is attempting, inter alia, by an indirect method to vitiate the judgments of our appellate court, in which attempt we do not conceive that it is entitled to the aid of this court. As to the right to contribution between joint tortfeasors under the circumstances of this case,

see the Act of June 24, 1939, P. L. 1075, Goldman et al. v. Mitchell-Fletcher Co., 292 Pa. 354, and A. L. I. Restatement of Restitution, §§82, 86.

While plaintiff has an adequate and complete remedy at law, the multifarious nature of plaintiff's bill and the defects therein preclude the certification of the case to the law side of the court. Further, there is no reason for any such certification because there are now pending on the law side of the Philadelphia Common Pleas Courts more than 60 separate cases wherein the very question involved in this bill in equity is or may be raised.

While there undoubtedly are some instances where a court of equity will decree the specific performance of a general covenant of indemnity, it does not follow that equity may be used to supplant the courts of law and assume jurisdiction in actions of assumpsit. Plaintiff's prayer (*f*) that defendants be ordered to make contribution to plaintiff in the case of Ruhl, Admx., v. Philadelphia et al., supra, in the amount of $9,581.11 is without merit. If plaintiff has any right to recover that sum from defendants, it is only under the provisions of clause 15 of the lease agreement. Any attempt to enforce such recovery through litigation must be in an action at law in assumpsit. That, in effect, is what the Supreme Court has decided in the Trerotola case, supra.

That the city recognized that it has an adequate remedy at law is evidenced by the suggestion in its brief that the bill should not be dismissed, but should be certified to the law side of the court, and from the further suggestion that to compel the city to sue in assumpsit would place an unfair burden upon it because of the number of suits which are now pending. This suggestion is without merit, because the facts in the various cases may not be identical and, furthermore, the city is not required to bring a separate suit against The Philadelphia Gas Works Company in every case which is litigated against the city and the gas com-

pany jointly and one suit at law may be instituted to cover any number of judgments.

Clause 15 of the lease agreement reads as follows:

"Clause 15. Gas Company, at its own cost and expense, shall at all times during this agreement, indemnify and save harmless the City from all loss, injury or damage which may be suffered by City, or by any individual or corporation in his or its person or property by reason of any negligence of said Gas Company, or of the servants, agents or employees thereof, in the use and occupation of the Gas Works."

As stated above, we are of the opinion that there is no ambiguity in this clause. The real purpose of the provisions of this clause is not to indemnify the city against loss by reason of the negligence of its own employes, but clearly for the purpose of protecting the city from being charged with loss suffered as a result of the negligence of the company operating its gas works.

At the oral argument in this matter counsel for the city admitted that there was no ambiguity in the clause, but in its written brief the city bases its argument upon the premise that there is an ambiguity or obscurity in the language of the clause.

In analyzing the provisions of clause 15 in the light of well-established principles of law for the interpretation of contracts, we also come to the conclusion that the clause does not have the meaning which plaintiff seeks to impress upon it, and that to adopt plaintiff's interpretation would not only be in violation of well-known principles of law but would lead to very unfortunate results.

It must be conceded that The Philadelphia Gas Works Company and The United Gas Improvement Company are not engaged in the surety or insurance business and that it is well settled that, while a contract of suretyship or indemnity is construed against one whose business is to enter into such contracts, the rule is otherwise where the indemnitor is not regularly en-

gaged in such business. In the latter case the indemnitor's liability is to be strictly construed. Thus, in Manufacturers & Merchants B. & L. Assn. v. Willey et al., 321 Pa. 340 (1936), Mr. Justice (now Chief Justice) Maxey spoke as follows (p. 344) :

"While we have held that in cases of corporate sureties, the bond is to be strictly construed in favor of the obligee, we have also held that when obligations of suretyship or indemnity are assumed by individuals without pecuniary compensation, their obligations are not to be extended by implication or construction. Their liability is strictissimi juris."

For this rule of strict construction to apply, it is not necessary that the indemnitor act wholly gratuitously. Thus, in Schroeder v. Gulf Refining Co. (No. 2), 300 Pa. 405 (1930), the rule of strict construction was applied in interpreting the indemnity clause of an agreement between an oil company and a filling station proprietor. In this case Mr. Justice Sadler said (p. 411) :

" 'A party may contract for indemnity against the results flowing from his own acts, but no inference from words of general import can establish it; on the contrary, the intent of both parties to that effect must be made apparent by clear, precise and unequivocal language': Camden Safe Dep. & Tr. Co. v. Eavenson, 295 Pa. 357. 'In all cases such contracts should be construed strictly with every intendment against the parties seeking their protection': Crew v. Bradstreet Co., 134 Pa. 161; P. R. R. Co. v. Roydhouse, 267 Pa. 368."

To the same effect see 27 Am. Jur. 464, Indemnity, §15. In view of these well-established principles, it is clearly the duty of the court to interpret clause 15 of the gas works lease strictly in favor of the gas works company. An interpretation which would permit the city to avoid contributing its share of a loss occasioned in part by its own negligence must, therefore, be rejected.

Furthermore, the prevailing view in most jurisdictions is that a contract of indemnity against one's own negligence is forbidden by public policy: 38 A. L. R. 580; 27 Am. Jur. 460, Indemnity, §9.

In Perry v. Payne, 217 Pa. 252, the owner of a building, one Perry, had employed defendant to erect a building and defendant had given to Perry a bond conditioned, inter alia, that defendant

". . . 'shall protect and keep harmless the said Edward Perry . . . from damages arising from accidents to persons employed in the construction of, or passing near the said work . . .' "

A painter was killed as the result of the negligence of the owner Perry, whereafter his widow obtained a judgment against Perry, who sued defendant in assumpsit on the bond. The action was based upon Perry's contention that the bond indemnified him against all damages arising from injuries to any person employed about the work, whether the injuries were caused by the negligence of defendant or by the negligence of Perry himself or his employes.

It will be observed that this is in substance the identical contention which is here made by the City of Philadelphia against The Philadelphia Gas Works Company.

In sustaining the judgment of the lower court entered for defendant, Mr. Justice Mestrezat carefully discussed the position of the parties and the language of the bond and then, at page 259, stated:

"It is contrary to experience and against reason that the contractors should agree to indemnify Perry against the negligence of himself or his employees. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of Perry. The results of such a liability might become most disastrous. While the consideration named in the contract for the construction of the building and indemnifying the owner was large, yet it was wholly inadequate to

justify the contractors in assuming liability for his negligence in view of the responsibility in constructing the building. The profits to be realized on the contract were entirely too small to warrant the contractors in agreeing to assume a liability of such great proportions and of such unlimited extent. A single act of negligence on the part of the owner or his employees, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay. An interpretation of the bond which might give rise to such results could hardly be regarded as reasonable or as giving effect to the intention of the parties."

Later in his opinion Mr. Justice Mestrezat quoted Mr. Justice Lewis of the Supreme Court of Virginia in the case of Johnson's Admr. v. Richmond & Danville R. R. Co., 86 Va. 975, who, in discussing a similar contention, used language which Justice Mestrezat quotes at page 261, as follows:

" 'It would be strange, indeed, if such a doctrine could be maintained. To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void.' "

In conclusion, Mr. Justice Mestrezat laid down language which has been many times subsequently approved by the appellate courts of this State and cited by the appellate courts of others. This language, at pages 262 and 263, follows:

"We think it clear, on reason and authority, that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and

extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it. The manifest purpose, in such cases, to indemnify against the injury which, under the circumstances, could reasonably be apprehended only from the action of the indemnitor or his servant, is a weighty consideration in construing indemnity contracts."

This is also the rule of the Federal courts: Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen, etc., 74 F. (2d) 983.

Plaintiff has laid great stress upon the applicability of the decision of Mr. Justice Drew in Cannon v. Bresch, 307 Pa. 31, to its contention. An examination of the decision in that case, however, does not sustain plaintiff's position. In the Cannon case a tenant claimed damages to his property as the result of the negligence of the landlord. The claim was that the landlord negligently allowed water to run over the tenant's property and the defense was that under the lease agreement between the parties the tenant had expressly agreed that the landlord would not be responsible for water damage sustained by the tenant. Mr. Justice Drew very aptly described the situation when, at page 34, he used the following language:

"The lease provides that the landlord shall be released 'from all liability for any and all damage caused by water.' "

It is clear in that case that by an express agreement the landlord was released "from all liability for any and all damage caused by water".

It is significant to point out that in the Cannon case there could have been no question but that the very situation then before the court was contemplated by the parties who made the lease, and that the tenant specifically agreed that the landlord should not be re-

sponsible to him for water damages. That the principle of that case can have no application to the case at bar is fortified by the court's express affirmance therein of the principle so clearly announced in Perry v. Payne, supra, which Mr. Justice Drew cited with approval, and by the difference in the factual situation. Furthermore, it will be noted that in the case at bar we are concerned with the claims of third persons who allege they have sustained injuries and damage as the result of the negligence of both the city and the gas company. In the Cannon case the controversy was between the parties to the agreement. As was said by Mr. Justice Drew in the Cannon case, at page 35:

"It is a contract between persons conducting a strictly private business and relates entirely to their personal and private affairs, and so cannot be opposed to public policy. It would seem to be a matter of no interest to the public or the State."

The contract in the case at bar is between a municipality and a quasi-public or public utility corporation in which the taxpayers, the gas consumers, and the public generally do have an interest.

Plaintiff also relies heavily upon the case of National Transit Co. v. Davis, 6 F. (2d) 729 (1925), maintaining that the Third Circuit Court of Appeals in that case, in discussing whether a contract could be construed to indemnify plaintiff against his own negligence, adopted a statement of the trial judge in the court below as follows (p. 731):

"It is true that the courts have said that in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence."

It will be recalled, however, that in Perry v. Payne, supra, Mr. Justice Mestrezat stated that an indemnity agreement would not be construed to cover loss from the indemnitee's own negligence (p. 262):

". . . unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it."

The contract in question being a Pennsylvania contract, we must interpret it according to the laws of Pennsylvania, and not on the basis of some rule of construction enunciated by other jurisdictions or by the Federal courts.

In the National Transit Co. v. Davis case, the contract between a railroad and an oil company provided (p. 729) that an oil company would "indemnify and save harmless the party of the first part [railroad] from and against all claims, suits, costs, losses and expenses, in any manner resulting from, or arising out of, the laying, maintenance, renewal, repair, use or existence of said pipe (whether heretofore or hereafter laid) including the breaking of the same or the leaking of oil from the same."

The railroad had granted the oil company the permissive use of its roadbed for the laying of oil pipes for the use, not of the railroad, but of the oil company.

Judge Buffington, speaking for the court, at page 730, said:

"It was simply an agreement by which the transit company obtained permission to use the property of the railroad in carrying on its own business of transporting oil."

The oil company's pipeline broke and flooded the railroad tracks. The oil was set on fire in some manner by a switching engine of the railroad, and a factory belonging to a third party, which abutted the railroad tracks, was burned. The owner of the factory brought suit against the railroad in the courts of the State of Pennsylvania and recovered. The railroad (through the Director General of Railroads) then brought suit in the Federal court to enforce the indemnity agreement. It will be seen that under the facts the court could reason, as the circuit court of appeals apparently did, that

this was a claim clearly within the meaning of the indemnity agreement, and that if the oil company's pipeline broke and the oil on the tracks caught fire the clause applied even though the railroad's engine set it afire, and that to say that the clause applied only when the railroad was blameless would be practically to annul the agreement. In other words, there is justification for the decision of the circuit court of appeals in the reasoning that the intention of the agreement to hold the oil company responsible under the facts of the case was expressed in unequivocal terms.

But the statement of the principle of law quoted by plaintiff, to wit (p. 731) : "It is true that the courts have said that in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence"; is not in the opinion of the circuit court of appeals but is contained in the opinion of the trial judge of the district court. (See note 1, at page 730 of the opinion of the circuit court of appeals.) In any event, it is not a statement of the law in Pennsylvania (Perry v. Payne, supra) and is contrary to the rule enunciated by the Circuit Court of Appeals for the Fifth Circuit in Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen, etc., 74 F. (2d) 983, 984 (1935), supra, where it was held:

"It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms."

Among the cases cited by the court as authority for the above rule is Perry v. Payne, supra. The facts in the above case were that the telephone company entered into a contract requiring the city to indemnify it against damages in connection with the city's maintenance of its attachments on company poles, and the

court held that the agreement did not cover liability incurred when a pole broke off below the ground because of decay while the city's fire department employe was on the pole inspecting the city's fire alarm system.

Although the city seeks to have clause 15 so interpreted as to cover losses brought about by the joint negligence of the gas works company and the city, i. e., losses brought about by the gas works company's negligence to which the city's negligence contributed, in a situation similar to that presented by the Greenwich Street explosions, it is manifestly illogical to draw the line at that point and say that it does not, a fortiori, cover the losses from gas explosions which occurred in and about the operation and management of the municipal gas plant, which are caused by the negligence of the city alone. By no flight of the imagination could such a conclusion be reached. The city cannot thus legally delegate to the gas works company its responsibility for negligence under such circumstances.

The Philadelphia Gas Works Company is a public service corporation. Under the laws of Pennsylvania such companies can be incorporated only for the single purpose of supplying the public with gas, electricity, transportation, or similar public service in a stated locality or territory. It was not shown by the evidence, and could not be shown, that it was authorized by its articles of incorporation to enter into contracts for the indemnifying of another against the negligence of the latter's own employes. A corporation has no implied power to enter into a guaranty, suretyship, or indemnity contract unless it is in furtherance of its business: Strauss v. W. H. Strauss & Co., Inc., 330 Pa. 517; Globe Indemnity Co. v. McCullom, 313 Pa. 135.

The gas companies have not interposed the defense of ultra vires in this case, but consideration of the question throws some light upon the intention of the parties to the lease agreement. In San Diego Water Co. v.

San Diego Flume Co., 108 Cal. 549, 41 Pac. 495, 29 L. R. A. 839, it was held that the power of two corporations to enter into a contract with each other depends upon the character of the contract, examined in the light of their charters and public policy.

In 13 Am. Jur. 824, §811, the law is stated thus:

"Any contract by a corporation which disables or limits it in the exercise of a franchise intended to be exercised for the public good is void as against public policy. Accordingly, it is well recognized that quasi-public corporations have no implied power to enter into contracts whereby the performance of their duties to the public is prevented or unduly restricted."

To the same effect see Gibbs v. Consolidated Gas Company of Baltimore, 130 U. S. 396.

At least for the purpose of arriving at the interpretation of clause 15, inasmuch as the city contends it is ambiguous, it may be fairly assumed that the framers of the clause had in mind when the clause was drawn that the insurance of the city against its own negligence was not within the corporate power of the gas works company.

We are also of the opinion that the construction for which the city contends must be denied on the other ground of public policy. To sustain the city's contention that where loss is occasioned by the negligence of both the gas works company's and the city's employes the city does not have to pay for its share of the loss, but the entire burden is to be borne by the gas works company, would result in casting the burden upon the consumers of gas rather than upon the taxpayers generally, where it belongs.

It is well established that a public utility may not favor a municipality where the effect of such action is to increase the burden upon its general consumers or patrons, such a shifting of the burden of municipal costs to a particular group being discriminatory and against public policy.

This principle has been applied by the courts and commissions of many States and in many situations. Thus in Borough of Auburn v. Auburn Water Co., 31 P. U. R. (N. S.) 56 (1939), the Public Utility Commission of Pennsylvania held it unlawful for a water company to furnish public fire hydrant service to a municipality free of charge, even though a franchise ordinance provided for such free service, since this thrust upon the consumers the burden of a service which should have been maintained by the municipality as a whole. In Tamaqua v. Eastern Pennsylvania L., H. & P. Co., P. U. R. 1919F 712, the commission held it unlawful for a gas company to furnish free gas to a municipality under a franchise ordinance.

In Wayne Sewerage Co. v. Fronefield et al., 76 Pa. Superior Ct. 491, 499, Judge Keller said:

"Free use of public service by certain favored persons cannot be permitted under any form, whether deed, contract, ordinance, agreement, or otherwise: Vernon Township v. Public Service Commission [1920], 75 Pa. Superior Ct. 54; Ben Avon Borough v. Ohio Valley Water Co. [1921], 75 Pa. Superior Ct. 290; for it imposes on the other users not only their own fair share of the cost and expense of operation but also the shares which such favored users ought to pay and is therefore preferential, unjust and unreasonable."

Although the regulatory body in this State is fortified by a statutory provision forbidding discriminatory rates (section 304 of the Public Utility Law of May 28, 1937, P. L. 1053, which was a reënactment of article III, sec. 8, of the previous Public Service Company Law) and the rates for public service by the operating agencies of municipal corporations are not subject to regulation by the Utility Commission (Act of March 21, 1939, P. L. 10, amending section 301 of the Public Utility Law of 1937, and Graham v. Philadelphia et al., 334 Pa. 513), the rule laid down in the above cases is expressive of the common law itself: 51 C. J. 7, 29, Public Utilities, §§16, 61. Moreover, since prohibition

against discrimination in favor of a municipality has been part of the statutory law of the State since 1913, it may be taken to represent the settled public policy of the State. As pointed out by Mr. Chief Justice Kephart in Graham v. Philadelphia et al. (p. 522) :

"While there is the contingency that the legislature might in the future enact such laws [i. e. placing the rates for municipal public services under commission regulation], if it does so, such rate regulations must permit a fair return on a fair valuation of the property involved to be constitutional under our decisions."

Experience has shown that an extensive utility business cannot be carried on without accidents due to the negligence of the employes of the corporation. Accident expense is as much an expense of the business as any other expense and the cost of meeting the liability for damages is universally recognized as an item of cost which must be reflected in the rates charged. Manifestly, it would be unfair to impose upon the gas consumers accident expense which is not due to the negligence of the employes furnishing them the gas service.

Similarly, in In re Monmouth Consolidated Water Company, 40 P. U. R. (N. S.) 292 (1941), the New Jersey commission held it unlawfully discriminatory for a water company to furnish free fire hydrant service to municipalities. This service, the commission pointed out, "was not in fact free. Its cost was borne by the other public and private consumers".

The Illinois commission in In re William Hale Thompson et al., P. U. R. 1922A 558 (1921), in considering what operating expenses of a street car company should be included in determining the rate, pointed out that paving and sprinkling streets was "a matter of local taxation rather than a burden to be placed upon the patrons of public utilities". The principle that utilities patrons should not be charged with burdens which are properly those of the taxpayers was also laid down by the Tennessee commission in In re Nashville

Railway & Light Co., P. U. R. 1920C 1 (1920), by the Oregon commission in In re Portland Railway, Light & Power Co., P. U. R. 1920C 428 (1920), and by the Manitoba commission in In re Winnipeg Electric Railway Co., P. U. R. 1920F 879 (1920).

The foregoing authorities thus definitely establish the principle that it is against the public interest to impose upon utility patrons, such as gas consumers, burdens which should be borne by the taxpayers as a whole, such as liability for losses due to the negligence of municipal employes.

That the city, as well as the gas works company, did not intend to impose the unusual burden of indemnifying the city for the negligence of the city's employes upon the gas consumers is clearly indicated by the second paragraph of the preamble to the agreement of October 5, 1938, which reads as follows:

"And whereas, The City of Philadelphia, being the owner of the said Philadelphia Gas Works, is desirous of obtaining an agreement which will be to the best interest of the gas consumers of the City of Philadelphia, contemplating, however, proper compensation to the lessee".

It is no answer to say, as the city has said at page 22 of its third and most recent brief, that the gas rates will not be affected if the city succeeds in its contention. The city bases this argument on the fact that the gas works is protected within certain limits described above by an indemnity policy with the Indemnity Insurance Company of North America. It is obvious that if the city succeeds in establishing the principle that the gas works company must pay for the loss caused by the negligence of the city's own employes the cost of such insurance will increase, thus adding to the operating costs which must be borne by the gas consumers.

It is noteworthy that none of the decisions which the city has cited on the question of public policy deals with a situation in which there was any possibility of an

undue burden being cast upon the patrons of public utilities. While some of the cases involve common carriers, the carrier was in each case the plaintiff-indemnitee, and no question of general public interest was considered or involved. Those decisions are, therefore, no authority for holding that the agreement in this case, if construed to indemnify the city against the negligence of its own employes, would not contravene public policy.

The only witness produced by plaintiff was Assistant City Solicitor G. Coe Farrier, who was called for the stated purpose of proving that the lease agreement of October 5, 1938, was drawn by counsel for The Philadelphia Gas Works Company, for which reason plaintiff contended it should be strictly construed against defendants. Inasmuch as we are of the opinion that clause 15 is unambiguous, we would be justified in striking Mr. Farrier's testimony from the record, but nevertheless we have given it careful consideration and from our examination of it come to the conclusion that plaintiff has failed to prove its contention. In fact, the testimony shows that the lease was the outcome of many months of negotiations between the city and The Philadelphia Gas Works Company and the United Gas Improvement Company, during which public hearings were held before the City Council of Philadelphia and a committee of the said city council, at which many changes were made at the suggestion of various councilmen and the various clauses were "gone over and discussed", and about four thousand pages of testimony with respect to the various provisions of the lease were taken. Further, the record in this case shows that clause 15 of the lease is based upon a predecessor agreement which had been in effect for over 10 years. (See clause 13 of agreement of February 8, 1926, defendants' exhibit "B") and was substantially the same as clause 15 in the agreement between the city and The United Gas Improvement Company dated November 12, 1897 (defendants' exhibit "A").

In operating and maintaining a system for the general distribution of water to its citizens, a municipality acts in a proprietary rather than a governmental capacity. Thus, in Boyle, Trustee, v. Pittsburgh, 145 Pa. Superior Ct. 325 (1941), where damage was caused by the city's failure to inspect and repair a water main, the city was held liable in the same manner as if it had been a private corporation. In Honaman et al. v. Philadelphia, 322 Pa. 535 (1936), Mr. Justice Stern pointed out, at page 539, that when a city acts in its corporate or proprietary capacity it is subject to the same measure of care as any other person.

By the same token, in a contract into which the city enters in such capacity, the canons of interpretation should not be altered by reason of the fact that one of the parties is a municipality, but the city's rights and obligations should be as strictly construed as if it were a private contracting party.

The fact that in operating the water works the city is acting in the same capacity as a private corporation affords further reason why losses resulting from the negligent performance of that corporate activity should not by strained implication be cast upon the consumers of gas. As previously stated, it has been universally held that burdens which are properly those of the taxpayers may not be cast upon utility consumers. The instant case goes still further in that the city seeks to cast upon the gas consumers burdens which properly belong, not to the consumers of water or to the taxpayers as such, but to the taxpayers as owners of the water works. For the above reasons, the construction of clause 15 for which the city contends is wholly unjustified. In its operation of the water works the city is charged with a duty of public service and the general rule of law is that it is illegal for it in such a capacity to bargain for exemption from liability for the consequences of its own negligence.

In A. L. I. Restatement of Contracts, §575, the following rule is stated:

"(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if . . .

"(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

Broadly speaking, the agreements for the operation of the municipal gas works were originally looked upon as lease agreements between a landlord and tenant, and later on as management contracts whereby an owner placed property in the hands of another for the purpose of operation and management. The real purpose of clause 15 in the agreement of 1938 and of the similar clauses in the predecessor agreements was not to indemnify the city against loss suffered by reason of its own employes, but clearly for the purpose of protecting the city from being charged with loss suffered as a result of negligence of the company operating the gas works, irrespective of whether or not the said company was regarded as a manager, agent, or tenant.

The first prayer (a) of plaintiff's bill is that we construe clause 15 to include liability upon the part of The Philadelphia Gas Works Company for the city's negligence caused by the explosions of gas which took place on February 11, 1941. We do not so construe it and, inasmuch as plaintiff's bill is based primarily upon the contention set forth in that prayer, it follows that the other prayers in the bill fall with it.

With respect to the following prayers it will suffice briefly to discuss them as follows: In paragraph (b) the court is requested to order that the gas works company "specifically perform the provisions of clause 15". The remedy lies in an action in assumpsit. Paragraph (c) is in effect a prayer requesting the court to overreach the decisions of the Supreme Court already ren-

dered in two of the cases which have already been tried. Paragraph (d) is directed to the insurance companies. The Underwriters at Lloyds, London, has not been served and it was stated at bar that it placed no insurance for the gas works company. As to the Indemnity Insurance Company of North America there is no valid reason why any relief should be afforded to plaintiff as against it, since there is no contractual relationship or other privity between plaintiff and that insurance company. Prayer (e) has been withdrawn. Paragraph (f), relating to contribution, has been discussed. In paragraph (g) the court (sitting in equity) is requested to pre-judge an action at law now pending in Court of Common Pleas No. 7, although our Supreme Court has already directed that the issue therein be tried on the law side of the court. In paragraph (h) general relief is requested which must fall with the disallowance of the foregoing prayers. . . .

### Decree nisi

And now, to wit, September 16, 1943, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. The motions to dismiss filed by defendants in this matter are sustained.

2. Plaintiff's bill in equity filed herein is dismissed.

3. The payment of the costs of these proceedings shall be divided between plaintiff and defendants, plaintiff paying one half thereof and defendants one half thereof.

The prothonotary is directed to enter the foregoing decree nisi and to notify counsel of the filing of the above adjudication and decree nisi, and unless exceptions thereto are filed within 10 days, or if exceptions having been filed thereto are dismissed, either party may present a form of final decree in accordance with the terms of the decree nisi to be entered in the case.